JOHN OLIVEIRA[1] *vs.* PAUL PEREIRA & others.[2]

Bristol. September 14, 1992. - December 31, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Massachusetts Oil and Hazardous Material Release Prevention Act. Limitations, Statute of.*

In an action brought in 1988 seeking reimbursement of clean-up costs from the prior owners of certain property under § 4 of the Massachusetts Oil and Hazardous Material Release Prevention Act, G. L. c. 21E, the judge correctly concluded that the action was in the nature of a tort and that the three-year limitation period of G. L. c. 260, § 2A, was applicable. [71-73]

This court, holding that the date of accrual of an action for reimbursement of clean-up costs under G. L. c. 21E, § 4, is the date the costs of the cleanup are paid, remanded such an action for a determination of the date it accrued for purposes of the applicable statute of limitations, G. L. c. 260 § 2A. [73-74]

On remand of an action brought under G. L. c. 21E, § 4, the judge was to reconsider the issue of an award of attorneys' fees and expert opinion fees under G. L. c. 21E, § 15, in light of the holding of *Sanitoy, Inc.* v. *Ilco Unican Corp.*, 413 Mass. 627, 631 (1992). [74]

CIVIL ACTION commenced in the Superior Court Department on July 25, 1988.

The case was heard by *John M. Xifaras*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Brian R. Corey* for the plaintiff.

*Robert E. Allen, Jr.*, for Thomas Pereira & another, submitted a brief.

---

[1] Doing business as Four Square Village Garage.

[2] Thomas Pereira and Cora Pereira.

ABRAMS, J. The plaintiff, John Oliveira, appeals from a decision of a Superior Court judge that his claim against the defendants for reimbursement of clean-up costs arising from the contamination of property was barred by the statute of limitations. The judge determined[3] that the defendants, prior owners of the property, were liable for clean-up costs under the Massachusetts Oil and Hazardous Material Release Prevention Act (Act), G. L. c. 21E (1990 ed.), but the judge concluded that the complaint was not timely filed under G. L. c. 260, § 2A. The judge also ruled that the plaintiff's cause of action accrued at the time G. L. c. 21E was enacted. We transferred the plaintiff's appeal to this court on our own motion. The plaintiff argues that the judge erred in concluding that the statute had a three-year period of limitations. He also challenges the judge's determination of the date the claim accrued. For the reasons stated in this opinion, we affirm the judge's ruling that the three-year statute of limitations is applicable, but we reverse and remand for a determination of the date or dates that the plaintiff's cause of action accrued.

We summarize the judge's findings of fact. The plaintiff is the owner of a piece of property in Westport. The defendants Thomas and Cora Pereira owned the property from 1952 to 1981. Thomas Pereira owned and operated a filling station, used automobile lot, and automobile repair shop on the property until 1971. In 1971, the other defendant, Paul Pereira, leased the service station from his father, operating it until he purchased it in 1981. In 1981, the plaintiff operated the service station. Then Paul Pereira sold it to him on December 31, 1982. The plaintiff continues to use the property as a service station, used automobile business, and automobile repair shop.

Initially, the property contained two underground storage tanks, each with a 2,000-gallon capacity. Shell Oil Company

---

[3]The plaintiff moved for leave to file an amended complaint, seeking declaratory relief. The judge granted the motion and the plaintiff filed an amended complaint.

(Shell) owned these storage tanks. At some time in the early 1960's, Shell added one 4,000-gallon underground storage tank and piped the two smaller ones together. Around 1965, two 4,000-gallon tanks replaced the two smaller tanks.

In 1965 or 1966, after the underground tanks had been replaced, Thomas Pereira noticed an odor of gasoline in the water of the service station. A well that was approximately thirty-nine feet deep supplied the water. Thomas Pereira informed his Shell sales representative. Shell arranged to have the well pumped out, but the odor of gasoline persisted. Then, in 1972, while Paul Pereira operated the service station, Shell sandblasted and "fiberglassed" the underground storage tank. Subsequently, in the presence of his Shell representative, Paul Pereira was able to ignite water piped into the service station restroom. Shell transferred ownership of the underground storage tanks to Paul Pereira in 1979.[4] The odor of gasoline still persisted.

The judge found that gasoline had leaked out of the underground storage tank and contaminated "the site, a well and the ground water." He found that the contamination occurred while Thomas Pereira and Cora Pereira owned and operated the property and that it continued while they owned and Paul Pereira operated the service station. The judge also found that the plaintiff did not contribute to or cause the contamination of the property.

In 1987, the plaintiff wished to refinance. He approached a lender who required that he get a G. L. c. 21E inspection certificate. Therefore, the plaintiff engaged Clean Harbors, Inc. (Clean Harbors), to assess the property. Clean Harbors performed an assessment and determined that the presence of gasoline in the soil and well water contaminated the site. The plaintiff provided this information to the Department of Environmental Protection (DEP), as the Act requires. G. L. c. 21E, § 7 (1990 ed.). The DEP has placed the property on its list of confirmed contaminated sites, and has determined

---

[4]Beginning in 1987, Precision Testing Company has tested the tanks and lines each year and they have been sound.

that the property is a priority site. Wells have been dug to monitor the cleanup.

The judge found that the following were the expenses of the cleanup:

Phase I    - Limited Site Assessment:            $ 26,000
Phase II   - Comprehensive Site Assessment       340,000
Phase III - Development of Remedial
              Response Plan
                   and
Phase IV  - Implementation of Remedial
              Response Plan                      400,000
                                                 $766,000

In addition, he found that the plaintiff had expended $18,000 on preliminary assessments.

Finally, the judge determined whether the defendants were responsible parties under the Act. He found that Thomas Pereira was a responsible person because he owned the property and operated the property as a service station at the time the contamination occurred. Although aware of the condition, Thomas Pereira did not "assess, contain, or clean up the contamination" nor did he notify the DEP of the problem. The judge found Cora Pereira, as joint owner of the land with her husband, to be jointly and severally liable for the costs of assessment, containment, and removal of contamination at the site. The judge then found that Paul Pereira had operated the service station from 1971 to 1981 and that he was aware at all times that gasoline leakage had contaminated the site. The judge determined that Paul Pereira did not assess, contain or clean up the site and also did not notify the DEP of the contamination. He too was a responsible person under the Act. As responsible persons under the Act, the defendants were liable for the "costs of assessment, containment and removal" of contamination at the site. Because they failed to notify the DEP, they were not able to

avail themselves of the defense provided by G. L. c. 21E, § 5 (*c*) (3) (1990 ed.), to limit liability.[5]

Finding that the contamination damaged the plaintiff's property, the judge ruled that the plaintiff had a private cause of action, having undertaken assessment action regarding the release of oil. The judge ruled that the plaintiff was entitled to reimbursement. The judge also found that the plaintiff was entitled to reimbursement for clean-up costs not yet incurred, but that in order to recover he would have had to include a complaint for declaratory relief. The judge declared that the defendants were jointly and severally liable for containment and removal costs the plaintiff incurred, once they were incurred.

Continuing his findings, the judge discussed the appropriate statute of limitations. The judge ruled that the three-year statute of limitations under G. L. c. 260, § 2A (1990 ed.), controlled.[6] He then applied the "discovery rule" and ruled

---

[5]General Laws c. 21E, § 5 (*c*) (3), states that, "[s]ubject to the limitation provided in paragraph (*d*) there shall be no liability under paragraph (*a*) for a person otherwise liable who can establish by a preponderance of the evidence, (A) that the release or threat of release of oil or hazardous material and the damages resulting therefrom were caused by: . . . (3) an act or omission of a third party other than an employee or agent of the person, or than one whose act or omission occurs in connection with a contractual relationship existing directly or indirectly, with the person, except where the sole contractual arrangement arises from a published tariff and acceptance for carriage by a common carrier by rail, if the person establishes by a preponderance of the evidence that he exercised due care with respect to the oil or hazardous material, that he took precautions against for[e]seeable acts or omissions of any third party and the consequences that could for[e]seeably result from such acts or omissions, and that he complied with all notification requirements of section seven." The judge found that the defendants had a contractual relationship with Shell. He found that Shell, which "owned and maintained the underground storage tanks along with the defendants caused the contamination by the release of oil." The judge also found that the defendants had failed to "take precautions against foreseeable acts or omissions of any third party and the consequences that could foreseeably result from such acts or omissions." In addition, the judge found that, in order to use the defense of this section, the defendants would have had to comply with the notification procedures. *Id.*

[6]General Laws c. 260, § 2A, states that, "[e]xcept as otherwise provided, actions of tort, actions of contract to recover for personal injuries,

that the plaintiff had knowledge that the site was contaminated when he leased it in June, 1981, and at least when he purchased it in December, 1982. The judge noted, however, that the Legislature did not enact the provisions of G. L. c. 21E, until March 24, 1983. He ruled therefore that the statute of limitations began to run on that date. Because the action was commenced on July 25, 1988, the judge found that it was barred by the statute of limitations. On that basis, he ruled in favor of the defendants.

1. *The statute of limitations under the Act.* A. *The proper length of the limitations period.* The judge analyzed the plaintiff's claim under § 4 of the Act as a tort, applying the statute of limitations found in G. L. c. 260, § 2A. The plaintiff insists that this was error, asserting that his action is not in the nature of a tort, but is, according to the language of the Act, an action for reimbursement. The plaintiff claims that his action should be allowed to proceed under G. L. c. 260, § 2 (1990 ed.), which states that "[a]ctions of contract, other than those to recover for personal injuries, founded upon contracts or liabilities, express or implied . . . shall, except as otherwise provided, be commenced only within six years next after the cause of action accrues."[7] In the alternative, the plaintiff suggests that the action for reimbursement is equitable. If so, to succeed on a time-bar defense, the defendants would have had to plead laches and show that they had experienced some prejudice because the plaintiff unreasonably delayed in bringing his action. *Jubinville* v. *Jubinville*, 313 Mass. 103, 105 (1943).

and actions of replevin, shall be commenced only within three years next after the cause of action accrues."

[7] The plaintiff argues that he should receive the benefit of a six-year statute of limitations under G. L. c. 260, § 2. The record does not reveal a contract between the parties indicating the proper allocation of responsibility for clean-up costs. Thus, we reject the plaintiff's suggestion that a contract statute of limitations should apply. At least one commentator has noted, however, that cost recovery actions under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), the Federal analogue to the Act, are quasi-contractual. 3 R. Steinberg & R. Mays, RCRA and Superfund 37-12 (1992).

Prior to 1992, the Act contained no statute of limitations for actions brought under § 4. See G. L. c. 21E, §§ 1-18.[8] See also Rosenblatt, Settlement Procedures and Strategy in Chapter 21E Private Party Cases, Environmental Litigation '91 21, 27-28 (Mass. Continuing Legal Educ. 1991). Section 4 of the Act, as it read at the time of trial, provided that "[a]ny person who undertakes assessment, containment or removal action regarding the release or threat of release of oil or hazardous material shall be entitled to *reimbursement* from any other person liable for such release or threat of release for the reasonable costs of such assessment, containment and removal. If such release resulted from the *negligence of two or more persons*, each shall be liable to the others for his *pro rata share* of the costs of assessment, containment and removal" (emphasis added). The United States District Court for the District of Massachusetts, interpreting this language, stated that an action under this section was not in the nature of tort, but rather was an action for statutory indemnification. *Hays* v. *Mobil Oil Corp.*, 736 F. Supp. 387, 396 (D. Mass. 1990).

"Under Massachusetts law, the determination of whether the contract or tort statute of limitations applies is controlled by the essential nature of a party's claim. See *Hendrickson* v. *Sears*, 365 Mass. 83, 85 (1974); *Kagan* v. *Levenson*, 334 Mass. 100, 103 (1956). See also *Desmond* v. *Moffie*, 375 F.2d 742, 743-744 (1st Cir. 1967)." *Royal-Globe Ins. Co.* v. *Craven*, 411 Mass. 629, 636 (1992). The flaw in the plaintiff's claim is in reading § 4 alone. Determining liability for contamination is not the focus of § 4 of the Act. The language of the section presupposes liability when it states that one who "undertakes assessment . . . shall be entitled to reimbursement from any other person *liable* for such release" (emphasis added). G. L. c. 21E, § 4. Section 4 simply allows for reimbursement[9] of expenditures made. *Id.* The statute,

---

[8]We note that, initially, Congress did not include a statute of limitations in CERCLA. See 42 U.S.C. §§ 9601 et seq. (1988).

[9]In its 1992 amendments, the Legislature more clearly defined the nature of an action under § 4 of the Act. While still articulating that a party

read as a whole, suggests that the essential nature of claims under G. L. c. 21E sounds in tort. For example, § 5 (*a*) talks of *joint and several liability* in some instances, and § 5 (*c*) (3) provides an exception to liability where a "person establishes by a preponderance of the evidence that he exercised *due care* with respect to the oil or hazardous material, that he took precautions against *for[e]seeable acts or omissions* of any third party and the consequences that could *for[e]seeably result from such acts or omissions*." In addition, § 7 requires a party to notify DEP when "he has *knowledge* of a release or a threat of release of oil or hazardous material." We conclude that the statute, read as a whole, sounds more in tort than in contract. See *Pentucket Manor Chronic Hosp., Inc.* v. *Rate Setting Comm'n*, 394 Mass. 233, 240 (1985); *Commonwealth* v. *Adams*, 389 Mass. 265, 273 (1983) ("basic principle of statutory construction [is] that a statute must be read as a whole"); *Holbrook* v. *Holbrook*, 1 Pick. 248, 250 (1822). There is no error in the judge's determination.

B. *The proper date of accrual.* The judge found that the plaintiff knew the property was contaminated when he leased it or at least when he purchased it in December, 1982. Because the Legislature had not then passed the Act, the judge found that the plaintiff's cause of action accrued on March 24, 1983, the date the Act became effective.

An action under § 4 of G. L. c. 21E, is an action for reimbursement. The plaintiff brought this case in order to be reimbursed for the "reasonable costs of such assessment, containment and removal." G. L. c. 21E, § 4. We have defined "reimbursement" as "repaying or making good the amount paid out." *Boston* v. *Commonwealth*, 322 Mass. 177, 179 (1947). Thus, to be reimbursed, the plaintiff must have paid

---

would be entitled to "reimbursement," the statute allows for an equitable sharing of the costs of any response actions. St. 1992, c. 133, § 293. It continues, directing that any "claims and actions for contribution, reimbursement or equitable share" be brought pursuant to the procedure outlined in the new § 4A. *Id.*

the sum due.[10] The proper date or dates of accrual of the actions for reimbursement of assessment costs is the date or dates the assessment costs were paid.[11] Accord *Hays* v. *Mobil Oil Corp.*, *supra* at 397 (judge found that the "limitations period on plaintiff's [c.] 21E cause of action did not begin to run when plaintiff first learned of the soil contamination . . . but when plaintiff's liability for the cleanup of the site was finally fixed").[12] The judge made no findings, however, as to the date or dates the clean-up costs were paid. We therefore remand for a determination of the date or dates the plaintiff made payments.

2. *The availability of attorneys' fees under the Act.* The plaintiff argues that the judge erred in refusing to award attorneys' fees and expert opinion fees under G. L. c. 21E, § 15. Because the judge did not have the benefit of our opinion in *Sanitoy, Inc.* v. *Ilco Unican Corp.*, 413 Mass. 627, 631 (1992), we also remand this issue for reconsideration.

In sum, the judgment is reversed and the case is remanded to the Superior Court for determination of the date or dates on which the plaintiff paid reimbursement for the clean-up costs to determine whether the claims are barred by the three-year statute of limitations and for reconsideration of his claim for attorneys' fees and expert witness fees if the

---

[10]The judge ruled that Oliveira had "incurred costs in evaluating pollu-·tion on his property." We have defined costs "incurred" as meaning those costs that one is "personally obligated to pay." *Lincoln St. Realty Co.* v. *Green*, 374 Mass. 630, 632 (1978). The implication of the judge's language, however, is that Oliveira had paid out assessment costs and therefore was entitled to reimbursement.

[11]Because the action is one for reimbursement, it is possible to have more than one cause of action and more than one accrual date. The 1986 amendments to CERCLA contemplate that claims for recovery of costs might be brought in more than one action. See 42 U.S.C. § 9613(g)(2) (1988). In the new statute of limitations under G. L. c. 21E, § 11A, an individual may bring suit within three years of payment. St. 1992, c. 133, § 309.

[12]At least one commentator has noted that "[i]t may take several years of sophisticated environmental studies before the plaintiff can determine whether he has a claim or has a claim serious enough to warrant suit." Rosenblatt, *supra* at 27.

plaintiff is entitled to reimbursement of the assessment costs. The statute of limitations to be applied is three years.[13]

*So ordered.*

---

[13]In July, 1992, the Legislature enacted significant additions to and alterations of the Act. See, e.g., St. 1992, c. 133, §§ 293, 294, 309. Among them was G. L. c. 21E, § 11A, which provides a statute of limitations for actions under § 4 of the Act. St. 1992, c. 133, § 309. This new statute of limitation reads: "Notwithstanding any other general or special law to the contrary, civil actions pursuant to this chapter shall be brought in accordance with the following deadlines: . . . (2) Actions brought by persons other than the commonwealth pursuant to sections four or four A to recover reimbursement, contribution or equitable share shall be commenced within three years after the date the person seeking recovery discovers or reasonably should have discovered that the person against whom the action is being brought is a person liable pursuant to the provisions of this chapter for the release or threat of release for which such costs or liability were incurred, or within three years of the time when the person bringing the action first learns of a material violation of an agreement entered into pursuant to section four A, or within three years after the person bringing the action incurs all response costs, or within three years after payment by the person seeking contribution, reimbursement, or an equitable share for liability pursuant to the provisions of this chapter, or within three years after sending notice pursuant to the first paragraph of section four A, whichever is later."