ONE WHEELER ROAD ASSOCIATES
and The Gutierrez Company,
Plaintiffs,

v.

The FOXBORO COMPANY, Defendant.

Civ. A. No. 90–12873–Y.

United States District Court,
D. Massachusetts.

Feb. 7, 1994.

Richard A. Johnston, James W. Prendergrast, David S. Nalven, Hale & Dorr, Boston, MA, for plaintiffs.

Louis N. Massery, Roy P. Giarrusso, Cooley, Manion, Moore & Jones, Boston, MA, for defendant.

## MEMORANDUM

YOUNG, District Judge.

In a society where toxic chemicals are generated daily, some landowners deposit such materials on their own property. Instead of removing the materials, they remove themselves, leaving subsequent owners to contend with the contamination. The Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601–9675 ("CERCLA"), and the Massachusetts Oil and Hazardous Material Release Prevention Act ("Mass.Gen.L. ch. 21E") address such situations. These statutes allow an individual landowner to bring an action against another responsible for the contamination in order to recover the costs of cleanup. Section 5 of chapter 21E of the Massachusetts General Laws also entitles a landowner, upon competent proof, to recover damages to the value of the property resulting from the contamination. *See generally* Mark W. Roberts, Recovering Damages for Contaminated Real Estate, 22 Mass.L.Weekly, supp. at 1 (Dec. 20, 1993). Here, the plaintiff One Wheeler Road Associates ("Wheeler") comes before this Court seeking cleanup costs and damage to the value of its property pursuant to CERCLA and Mass. Gen.L. ch. 21E. Wheeler also makes a claim for restitution. The Foxboro Company ("Foxboro") moved for partial summary judgment, claiming that neither CERCLA nor Mass.Gen.L. ch. 21E, § 5 allows recovery for property damage from a subsequent purchaser in the position of Wheeler, and that the Mass.Gen.L. ch. 21E claim and a portion of the CERCLA claim are barred by the

statute of limitations. Foxboro also sought summary judgment on the restitution count. The Court made its ruling on these motions at the Final Pretrial Conference on December 14, 1993. This memorandum explains those rulings.

### UNDISPUTED FACTS ON THE SUMMARY JUDGMENT RECORD [1]

Wheeler owns commercial property located at 160 Wheeler Road, Burlington, Massachusetts. The Gutierrez Company is a general partner of Wheeler. This property was previously owned by Foxboro. Foxboro and one or more of Foxboro's predecessor corporations had owned or occupied the property from August, 1954, to December, 1978. There they manufactured electronic instruments and systems and used hazardous substances and materials including tetracholorethylene ("PCE") and tricholoroethylene ("TCE") in connection with their manufacturing operations. Foxboro released hazardous substances and materials at the site from interior sinks which discharged through a roof drainage network into an on-site leaching system.

In September, 1984, a health agent from the Burlington Board of Health collected liquid samples from the property which showed concentrations of hazardous substances and materials including PCE and TCE. The Board of Health thereafter notified Wheeler no later than April, 1985, that one of the prior occupants of the land had contaminated the property.

In December, 1984, Wheeler retained a hydrogeological consulting firm, Haley & Aldrich, to conduct an evaluation of the property's industrial waste leaching basin. The leaching basin was excavated in 1986 and a report submitted to the Massachusetts Department of Environmental Qualify Engineering ("DEQE") (now the Department of Environmental Protection ["DEP"]) explaining the excavation of the leaching basin and reporting the condition of the site after the excavation. The DEQE reviewed the report and required that further investigation of the

property be conducted to determine the extent of continued contamination. The DEQE stated that the "assessment has shown continued 'releases' at the site, which may be indicative of additional alternative 'sources' of contamination present or remaining." It also stated that further assessment at the site was required to evaluate the lateral and vertical extent of the soil and groundwater contamination.

Wheeler engaged in the assessment of site contaminants in the early summer of 1987. These studies concluded that the removal of the leaching basin by Haley & Aldrich did not address the remaining portions of the property such as the manholes, related drainage lines, and other site conditions. In September, 1988, Wheeler submitted a Phase III Environmental Studies report to the DEQE for approval. Approval was granted on April 14, 1989 for the remediation and removal of the remaining contamination on the property. The DEP then required Wheeler to submit a Phase IV Remedial Response Implementation Plan. After approval of that plan, Wheeler, in October, 1989, commenced removal of the manhole and drainage inverts, excavation of contaminated soils down to the bedrock surface, installation of vapor recovery points, and construction of a vapor recovery cell to remediate excavated soils. Approximately 800 cubic yards of contaminated soils, sludge, liquids, concrete, and other materials were removed from within and proximate to appurtenances associated with the roof drain network. In March 1990, according to Wheeler, removal was complete and final payments for the removal costs were made on April 24, 1990.

### DISCUSSION

Summary Judgment must be granted when there is no dispute as to material fact and the moving party is entitled to judgment as matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The Court must enter summary judgment if Wheeler fails to make a sufficient showing of

---

1. These are the facts as Wheeler presents them. Foxboro takes the position—for the purpose of

summary judgment only—that there are no disputed issues of material fact.

the essential elements of its case upon issues where it bears the burden of proof. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. This Court must, however, take all facts in the light most favorable to Wheeler and indulge in all reasonable inferences in its favor. *Frazier v. Bailey,* 957 F.2d 920, 922 (1st Cir. 1992); *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990).

### Count I—CERCLA

#### a. Damage to the Value of the Property

■ Wheeler seeks recovery of damage to the value of its property under CERCLA. CERCLA, however, does not provide a cause of action to recover damages in the value of the property. *Regan v. Cherry Corp.,* 706 F.Supp. 145, 151 (D.R.I.1989) (private litigation under CERCLA may recover necessary costs of response and not damages); *Piccolini v. Simon's Wrecking,* 686 F.Supp. 1063, 1068 (M.D.Pa.1988) (no recovery for damages resulting in diminution in the value of property and lost income). Superfund money is not available to compensate private parties for economic harm that results from discharge of hazardous substances. *Exxon Corp. v. Hunt,* 475 U.S. 355, 359, 106 S.Ct. 1103, 1107, 89 L.Ed.2d 364 (1986). Wheeler itself, in a footnote, agrees that under CERCLA economic damages for diminution in property value are not recoverable. *See Plaintiff's Amended Memorandum in Opposition to Defendant's Motion of Partial Summary Judgment* at 14 n. 6. Partial summary judgment was granted, therefore, on that portion of Count I seeking damages under CERCLA for the diminution in the value of the property.

#### b. Statute of Limitations

■ A plaintiff is required to bring an action under CERCLA within three years from the date removal of the contaminants was completed. 42 U.S.C. § 9613(g)(2).[2] Foxboro seeks partial summary judgment with respect to the costs incurred prior to November 28, 1987, three years before this suit was filed. Such an interpretation would render unrecoverable the costs associated with the 1986 excavation and backfilling of the leaching basin. Wheeler counters this contention by pointing out that the removal of the contaminants was not *complete* until March, 1990, eight months before the filing of this suit. For the purposes of this motion, it is undisputed that although the operation began in 1986 with the removal of the leaching basin, removal of the remaining contaminated soil and sludge from the drainage appurtenances on the property was not completed until March, 1990.

■ Congress intended that the government be given the tools necessary for the prompt and effective resolution of problems of a national magnitude resulting from hazardous waste disposal. *Kelley,* 786 F.Supp. at 1277 (citing *United States v. Reilly Tar & Chem. Corp.,* 546 F.Supp. 1100, 1112 [D.Minn.1982] ). Congress intended that those responsible for the problems caused by the disposal of chemical poisons bear the costs and responsibilities for remedying the harmful conditions they created. *Id.* Therefore, CERCLA should be given a broad and liberal construction, and should not be narrowly interpreted to frustrate the government's ability to respond promptly, or to limit the liability of those responsible for cleanup costs beyond the limits expressly provided. *Id.*

■ Removal actions include such action as may be necessary to monitor, assess, or

---

**2.** This particular statute of limitations provision, applicable to private cost recovery actions, was added by the Superfund Amendment and Reauthorization Act of 1986, Pub.L. No. 99–499, 100 Stat. 1613 (1986) ("SARA"), on October 17, 1986. Courts interpreting this statute of limitations have held that, with respect to claims accruing prior to the SARA amendments but not yet filed as of its effective date, the statute begins to run on October 17, 1986. *Kelley ex rel. State of Mich. v. E.I. duPont de Nemours & Co.,* 786 F.Supp. 1268, 1274–75 (E.D.Mich.1992); *Envi-* *ronmental Transp. Sys., Inc. v. ENSCO, Inc.,* 763 F.Supp. 384, 388 (C.D.Ill.1991), *aff'd,* 969 F.2d 503 (7th Cir.1992). The October 17, 1986 date only applies to cases in which removal was *completed* prior to October 17, 1986. *Kelley,* 786 F.Supp. at 1275. As Wheeler points out, removal of contaminated materials on its property was not completed before October 17, 1986. In this case, therefore, the statute of limitations commenced running on the date of final removal of the contaminants and not on October 17, 1986.

evaluate the release or threat of release of hazardous substances. 42 U.S.C. § 9601(23); *South Macomb Disposal Auth. v. EPA,* 681 F.Supp. 1244, 1246 (E.D.Mich.1988). The definition of "removal" is not taken in the literal sense, but includes all the processes related to removal, *i.e.,* the evaluation, the monitoring, and the preparations necessary to effectuate a literal removal. The removal process is complete only after the very last drum of contaminated soil has been removed from the property. *Kelley,* 786 F.Supp. at 1278.

After the removal of the leaching basin in 1986, Wheeler monitored and assessed the site to ensure that all the contamination was removed. In assessing the site, it found that the contamination was still present and, after approval from the state agency, it removed the contamination. This was all part of the same contamination that caused the leaching basin to be removed in 1986. These activities make up one "removal" under the statute. *Id.* at 1276–78. The fact that the entire contamination was not removed in one single endeavor does not start the statute of limitations running as to the completed part of the contamination removal. Rather, the contamination is perceived as a whole and removal of one portion is just one piece of the pie. Not until all portions of the contamination are removed can the removal be deemed completed. In this case, the "removal," as defined in the statute, began with the evaluation of the contamination, continued through the excavation of the leaching basin, included the assessment of the contamination after the leaching basin was extracted and concluded with the removal of the contaminated sludge and material in March, 1990. Wheeler's CERCLA claim is, therefore, not barred by the statute of limitations.

### *Count II—Mass.Gen.L. ch. 21E*

Wheeler brought actions under both §§ 4 and 5 of Mass.Gen.L. ch. 21E. Foxboro contends that Wheeler's claims under this chapter are barred by the statute of limitations. It also argues that chapter 21E, § 5 does not allow for the recovery of damages to property value.

a. Mass.Gen.L. ch. 21E, § 4—Statute of Limitations

■ At the time this complaint was filed in 1990, chapter 21E had no specified statute of limitations. This situation was remedied in 1992 by the enactment of Mass.Gen.L. ch. 21E, § 11A which provides:

Actions to recover for damage to real property shall be commenced within three years after the date that the person seeking recovery first suffers the damage or within three years after the date the person seeking recovery of such damage discovers or reasonably should have discovered that the person against whom the action is being brought is a person liable pursuant to this chapter for the release or threat of release that caused the damage, whichever is later.

*See generally* Jeffrey R. Porter, Amendments to 21E Impose New Prerequisites to Suit, 22 Mass.L.Weekly, supp. at 1 (Dec. 20, 1993). Before the 1992 amendment, courts interpreting chapter 21E concluded that the general Massachusetts tort statute of limitations, Mass.Gen.L. ch. 260, § 2A,—three years from the date the cause of action accrues—applies. *Oliveira v. Pereira,* 414 Mass. 66, 73, 605 N.E.2d 287 (1992) (the statute, as a whole, sounds more in tort than in contract) (citing *Commonwealth v. Adams,* 389 Mass. 265, 273, 450 N.E.2d 149 [1983] ["basic principle of statutory construction [is] that a statute must be read as a whole"] ); *accord Mazzeo v. Microwave Dev. Lab. Inc.,* Civil No. 90–1852 (Suffolk Super.Ct. Dec. 31, 1992) (Brady, J.). When seeking reimbursement under Mass.Gen.L. ch. 21E, § 4, the proper accrual dates are the dates the costs were incurred for which reimbursement is sought. *Oliveira,* 414 Mass. at 73–74, 605 N.E.2d 287; *accord Hays v. Mobil Oil Corp.,* 736 F.Supp. 387, 396–97 (D.Mass.1990), *aff'd in part, vacated in part on other grounds,* 930 F.2d 96 (1st Cir.1991). Wheeler thus has a valid and timely claim under Mass.Gen.L. ch. 21E, § 4 for reimbursement of all clean up costs paid during the three years prior to the filing of the present complaint.

b. Mass.Gen.L. ch. 21, § 5—Recovery of Damages to Real Property

■ Chapter 21E entitles a person to reimbursement for damage to his real or per-

sonal property and for reasonable costs of assessment, containment, and removal. *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 889 F.2d 1146, 1156 (1st Cir.1989). The statute holds a responsible former owner strictly liable to any person for damage to real or personal property incurred or suffered as a result of contamination from that owner's property. Mass.Gen.L. ch. 21E, § 5(a)(5)(iii).[3] "By explicitly creating a private right of action for damage to real or personal property, the Legislature indicated that another purpose in enacting G.L. ch. 21E was to enable private individuals to obtain a certain measure of compensation for loss resulting from environmental damage." *Guaranty–First Trust Co. v. Textron, Inc.*, 416 Mass. 332, 335, 622 N.E.2d 597 (1993). The phrase "damage to real and personal property" is not further defined in the statute. There is, therefore, no reason to assume that the Massachusetts legislature intended the meaning of the phrase to be any different than the concept at common law. *Pineo v. White*, 320 Mass. 487, 491, 70 N.E.2d 294 (1946).[4] Wheeler has thus asserted a valid claim under Mass.Gen.L. ch. 21E, § 5.

c. Mass.Gen.L. ch. 21E, § 5—Statute of Limitations

While there is no question that Mass. Gen.L. ch. 21E, § 5 allows Wheeler to recover damages to its property, the issue remains whether this action has been brought within the relevant statute of limitations. Although the Massachusetts Supreme Judicial Court has determined that an action under this section is one sounding in tort, thereby imposing a three year statute of limitations under Mass.Gen.L. ch. 260, § 2A, *Oliveira*, 414 Mass. at 73, 605 N.E.2d 287, no Massachusetts court has given guidance as to when the limitations period begins to run with respect to claims under Mass.Gen.L. ch. 21E, § 5. *See Mazzeo*, slip op. at 3–4.

Foxboro contends that the discovery rule [5] should apply in this case. It notes that the 1992 amendment adding section 11A(4) to chapter 21E expressly provides that an action under § 5(a)(5)(iii) accrues pursuant to the discovery rule. Foxboro argues that this amendment demonstrates the Massachusetts legislative intent and is entitled to great weight in analyzing this issue, especially since the pre–1992 statutory framework lacked a particularized statute of limitations provision. *United States v. Ven–Fuel, Inc.*, 758 F.2d 741, 758 (1st Cir.1985).

Wheeler, on the other hand, likens the contamination of its property to a continuing trespass or nuisance. Wheeler carefully characterizes the contamination as analogous to a nuisance or a continuing trespass, since the decisions in *Sheehy v. Lipton Indus. Inc.*, 24 Mass.App.Ct. 188, 191–92, 507 N.E.2d 781, *further review denied*, 400 Mass. 1103, 509 N.E.2d 1202 (1987) and *Wellesley Hills Realty Trust v. Mobil Oil Corp.*, 747 F.Supp. 93, 98–99 (D.Mass.1990) make clear that a former owner of property owes no duty to subsequent owners of property and any contamination left on the property by that owner is not a nuisance or a continuing trespass.[6]

---

**3.** The statute reads:

Except as otherwise provided in this section, any person who otherwise caused or is legally responsible for a release or threat of release of oil or hazardous material from a vessel or site, shall be liable, without regard to fault to any person for damage to his real or personal property incurred or suffered as a result of such release or threat of release.

Mass.Gen.L. ch. 21E, § 5(a)(5)(iii).

**4.** Under the common law of Massachusetts, recovery of damages for land contaminated with hazardous substances may include recovery for diminution in the fair market value of the land. *Bousquet v. Commonwealth*, 374 Mass. 824, 372 N.E.2d 257 (1978); *Gendreau v. C.K. Smith & Co.*, 22 Mass.App.Ct. 989, 497 N.E.2d 16 (1986).

**5.** The discovery rule states that a cause of action does not accrue until the plaintiffs knew or reasonably should have known that they were injured as a result of the defendant's conduct. *Cambridge Plating Co. v. Napco, Inc.*, 991 F.2d 21, 25 (1st Cir.1993) (interpreting Massachusetts law).

**6.** It is true that Mr. Justice Brady in *Mazzeo* described the defendant's contamination of the plaintiff's property as a continuing trespass on the plaintiff's land. *Mazzeo*, however, involved a plaintiff landowner whose property abutted the land of the defendant. In this case, in contrast, both the plaintiffs and the defendants owned the same property, one after the other.

Both positions are inapposite. Foxboro's reliance upon the later-enacted statute of limitations is a weak reed indeed since the views of a legislature sitting long after an event has taken place form a hazardous basis for inferring the earlier state of the common law. *See Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 117–18, 100 S.Ct. 2051, 2060–61, 64 L.Ed.2d 766 (1980) (quoting *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 331, 4 L.Ed.2d 334 [1960] ); *In re Acushnet River & New Bedford Harbor,* 675 F.Supp. 22, 35–37 (D.Mass.1987).

Wheeler's reliance upon an analogy to theories of continuing trespass or nuisance is likewise misplaced. The historical role of a nuisance action is to resolve conflicts between neighboring, contemporaneous land uses. *Philadelphia Elec. Co. v. Hercules, Inc.,* 762 F.2d 303, 314 (3d Cir.1985). Under Massachusetts law "a private nuisance claim is actionable when a property owner creates, permits, or maintains a condition or activity on his property that causes a substantial and unreasonable interference with the use and enjoyment *of the property of another." Wellesley,* 747 F.Supp. at 98 (citing *Asiala v. City of Fitchburg,* 24 Mass.App.Ct. 13, 17, 505 N.E.2d 575 [1987] ) (emphasis in original). Similarly, a trespass requires the unprivileged, intentional intrusion on land *in the possession of another. Wellesley,* 747 F.Supp. at 99 (citing *New England Box Co. v. C & R Const. Co.,* 313 Mass. 696, 707, 49 N.E.2d 121 [1943] and Restatement [Second] of Torts § 158). The Restatement (Second) Torts § 161(1), in its definition of a continuing trespass, states that a trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor has tortiously placed there, whether or not the actor had the ability to move it. For present purposes, the key phrase in this definition is *tortiously placed.* Contaminating one's own property under this definition is not, and cannot be, a continuing trespass. The analogy to nuisance and continuing trespass simply will not work as to Mass.Gen.L. ch. 21E, § 5.

Nor is it proper to apply to section 5 the interpretation given to section 4 of chapter 21E. Both sections address contamination, but the remedies given by each are entirely distinct. Section 5 provides for compensation to a plaintiff for a decrease in property value, while section 4 ensures restitution for a person who expends money for cleaning contamination caused by another.

In the absence of a controlling legislative mandate or Massachusetts precedent, the Court turns to the most closely analogous principles of the Massachusetts common law. An action under Mass.Gen.L. ch. 21E, § 5 is most closely analogous to a statutory tort. *Oliveira,* 414 Mass. at 73, 605 N.E.2d 287. The discovery rule is commonly followed in the Massachusetts courts in negligence cases, as well as in breach of warranty cases. *Pitts v. Aerolite SPE Corp.,* 673 F.Supp. 1123, 1127 (D.Mass.1987), *aff'd sub nom. Cornell v. E.I. DuPont de Nemours & Co.,* 841 F.2d 23 (1st Cir.1988). It is thus proper to use the discovery rule in interpreting section 5 of the statute.

Accordingly, under the common law of Massachusetts, the cause of action created by Mass.Gen.L. ch. 21E, § 5 accrues when Wheeler discovered or should reasonably have discovered that contamination had caused damage to the value of its property and that Foxboro had caused the damage. *See Anderson v. W.R. Grace & Co.,* 628 F.Supp. 1219, 1223 (D.Mass.1986). As in other cases involving statutory torts, the three year statute of limitations provided for in Mass.Gen.L. ch. 260, § 2A begins to run once the injury is or should reasonably have been discovered. *See, e.g., International Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc.,* 29 Mass.App.Ct. 215, 221, 560 N.E.2d 122 (1990) ("The accrual date for a ch. 93A cause of action is determined by the same principles dispositive of the accrual dates of general tort actions."). Here, Wheeler discovered the damage to its property in 1984 and knew or reasonably should have known that Foxboro was the cause of the damage in 1985. Wheeler did not bring the action during the three years that followed and is, therefore, barred from recovering the diminution in the value of its property under Mass.Gen.L. ch. 21E, § 5.

*Count III—Unjust Enrichment and Restitution*

■ Apparently fearing the bar of the statute of limitations might frustrate its Massachusetts statutory claims under chapter 21E, Wheeler in Count III advances equitable common law claims for unjust enrichment and restitution. Despite Foxboro's protestations to the contrary, there is sufficient evidence of record here to support an unjust enrichment claim. On a motion for summary judgment, all facts and inferences are to be taken in a light most favorable to Wheeler. *Garside*, 895 F.2d at 48. It is hard to imagine that Wheeler would have undertaken the entire cleanup of a site it did not contaminate and not have expected reimbursement from the contaminators. The inference that Wheeler intended to seek reimbursement from Foxboro must, upon the summary judgment record, therefore be taken as true. There are thus sufficient allegations here to satisfy the challenged element of the unjust enrichment claims.

■ Foxboro's challenge to the restitution claim on statute of limitation grounds likewise fails. Wheeler is seeking recovery in the form of reimbursement for expenses paid. The statute of limitations upon the restitution claim thus did not begin to run until April, 1990, when those payments were made. *Oliveira*, 414 Mass. at 72–73, 605 N.E.2d 287.

■ This latter ruling, however, marks the shoal upon which Foxboro's equitable claims founder. Wheeler's claims for cleanup costs under CERCLA and Mass.Gen.L. ch. 21E, § 4 are the statutory equivalent at law of the equitable claims sought to be asserted by Wheeler in Count III. As this Court rules above, the section 4 claim survives the statute of limitations bar and is thus putatively valid and enforceable. Since Wheeler has an adequate remedy at law for the damages that might be awarded for unjust enrichment or restitution, no independent equitable claim will lie. *Ben Elfman & Son, Inc. v. Criterion Mills, Inc.*, 774 F.Supp. 683, 687 (D.Mass.1991); *Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co.*, 534 F.Supp. 340, 347 (D.Mass.1982).

*CONCLUSION*

For these reasons, summary judgment was GRANTED for Foxboro as to that portion of Count I in which Wheeler seeks damage to the property value. Summary judgment was GRANTED for Foxboro as to that portion of Count II asserted under Mass.Gen.L. ch. 21E, § 5(a)(5)(iii), as it is barred by the statute of limitations. Finally, summary judgment was GRANTED for Foxboro as to Count III.