JENNIE SLOGGY *vs.* LAWRENCE DILWORTH and others, Executors.

38    179
85    156

### February 10, 1888.

Continuance of Nuisance—Liability of Creator after Conveyance—Successive Actions — Liability of Executors.—Where the land of one person is injured through the erection and maintenance of a nuisance by an adjoining owner upon his lands, the latter is liable to successive actions for damages arising from the continuance thereof. He cannot release himself from such liability by a conveyance of the premises, (though his grantee may also be liable;) but a cause of action does not survive against his legal representatives for damages resulting from the continuance of the nuisance after his death.

Same—Continuance—Successive Actions.—Every continuance of a nuisance, or recurrence of the injury, is an additional nuisance, forming in itself the subject-matter of a new action.

Same—Liability of Heir—Notice to Abate.—On the death of the ancestor, the right of possession of the realty is in the heir or devisee until the personal representatives take possession by virtue of the statute. The heir or other person succeeding to the possession, upon notice to abate, becomes thereafter liable.

Same — Proceedings to Abate.—In such cases the remedy of a party threatened with injury from the continuance of a nuisance is to give the proper notice, or take proceedings to abate or restrain the continuance of the same.

**Same—Joint and Several Liability for Nuisance.**—Where lands are un-
lawfully flooded with surface water, as the result of the joint act of sev-
eral parties, each may be sued for the entire damage. But where the
damage is the result of the acts of several, acting independently of each
other, each is liable for his proportion only.

Plaintiff brought this action in the district court for Clay county
against the defendants, as executors of the last will of Joseph Dil-
worth, deceased, to recover $2,400 damages for the destruction, in
June, 1885, of the plaintiff's crop of grain. The complaint alleges,
in substance, the wrongful erection by Dilworth of an embankment
on his own land, in 1883; that such embankment caused large quan-
tities of water to be collected and thrown upon the plaintiff's land, in
June, 1885, thereby destroying her crop; that Dilworth died in Jan-
uary, 1885, and the defendants were duly appointed executors by his
will, which was duly admitted to probate in March, 1885, in the state
of Pennsylvania, and that they have duly qualified as such executors.
The defendants, in their answer, deny that the plaintiff has been
damaged by any act of their testator or otherwise, and allege that the
embankment is a public road, and that it was erected with the knowl-
edge and consent of the plaintiff, and that the ditches constructed by
Dilworth were ample and sufficient to carry off all surface water.
They deny that the lands of the plaintiff were overflowed by reason
of such embankment, and allege that any injury to the plaintiff was
caused by certain other ditches, constructed by other parties, without
the knowledge or consent of Dilworth, and without his fault. Before
the trial a stipulation was entered into between the parties, which
recited that the defendants, foreign executors as well as heirs of Dil-
worth, did not wish to qualify at present, and did not wish plaintiff
to have administration granted here, and in which it was agreed that
the defendants would and did appear in the action, and would answer
to the merits, and would not question their own liability or their lia-
bility as such executors, or the claim that the plaintiff may have or
might have had against the estate, and would not question the right
of the plaintiff to sue the defendants in this way for the claim; and
the defendants further agreed by the stipulation to litigate the claim
as though it was their own liability as well as the liability of the

estate, and agreed to pay whatever judgment might be recovered against them. The action was tried before *Baxter*, J., and a jury, and plaintiff had a verdict for $675. It appeared upon the trial that when the embankment was constructed by Dilworth, the plaintiff's husband owned the land upon which her crop was grown, but that afterwards, and before 1885, such land was transferred to the plaintiff. The court denied the defendants' motion to dismiss, and, among other instructions, charged the jury that if the embankment and the ditches dug by the defendants' testator in part caused this loss, then they would be liable; and that if the ditches dug by him, combined with the other ditches, produced this result, then they would be liable for damages in this action. To this instruction the defendants excepted, and they appeal from an order refusing a new trial.

*R. R. Briggs,* for appellants.

*Frank D. Larrabee,* for respondent.

VANDERBURGH, J. In the year 1883 Joseph Dilworth, defendants' testator, owned sections 1 and 35, mentioned in the complaint, and one C. P. Sloggy, the husband of plaintiff, owned the N. W. ¼ of section 2, lying next adjoining on the south to the S. W. ¼ of section 35, and west of section 1, the N. E. ¼ of section 2 intervening. The line between sections 2 and 35 is the boundary line between the towns of Moorhead and Oakport. During the same year Dilworth caused to be constructed the ditches and embankments described in the complaint on the boundary lines between sections 1 and 2, and 2 and 35. Such embankments constituted and were intended for a road-bed or highway, with ditches on each side,—the ditches between sections 1 and 2 running north into the east and west ditches, which ran along the north line of Sloggy's land, and beyond, into a large drain which extends to the river. Sloggy had notice at the time of the construction of these ditches, and the next year transferred the land in question to the plaintiff, his wife, and has since acted as her agent in the management of it. In January, 1885, Joseph Dilworth, who was a non-resident, died, and in March following his will was admitted to probate at Pittsburgh, in the state of Pennsylvania, and the defendants duly qualified as executors. This action is brought to recover damages resulting from the destruction of plaintiff's crops

upon her land in the year 1885, alleged to have been caused by the overflow of the surface water gathered into the ditches dug by defendants' testator, as above described. No other or further acts of the deceased or his representatives are complained of than those above mentioned; that is to say, the ditches and embankments were made in 1883, and have since so remained. The action, then, is for consequential and special damage from flowage in 1885, and not for trespass and direct injuries to the premises then owned by plaintiff's husband in 1883.

1. Whether the latter licensed the excavation and embankment upon his own land we think was a question for the jury, and was determined by their verdict.

2. The verdict also determined that the effect of the ditches was to turn the water gathered from the low lands lying east of plaintiff's premises upon her land in unnatural quantities, to her damage, and resulting in the injury to her crops complained of.

3. The rule as laid down in *Dorman* v. *Ames*, 12 Minn. 347, (451,) and supported by the great weight of authority, is that the originator of a nuisance remains liable to successive actions for damages resulting from the maintenance thereof. *Plumer* v. *Harper*, 3 N. H. 88, (14 Am. Dec. 336, 338;) *Prentiss* v. *Wood*, 132 Mass. 486; *McDonough* v. *Gilman*, 3 Allen, 264, (80 Am. Dec. 72;) *Pillsbury* v. *Moore*, 44 Me. 154, (69 Am. Dec. 91;) *Eastman* v. *Amoskeag Mfg. Co.*, 44 N. H. 134, (82 Am. Dec. 201.)

4. He who erects a nuisance is liable for the damages arising from the erection, and also for the continuance thereof. The erection may of itself cause no injury, though an action may be proper in order to assert a right or prevent a threatened injury. But special damage may subsequently arise from its continuance, and so, while but one action can be maintained for its erection, repeated actions may be brought for its continuance. *Staple* v. *Spring*, 10 Mass. 72. And the originator is deemed to uphold and maintain it (as well as those claiming under him) while it it is suffered to be continued, and is accordingly liable for damages, and he cannot release himself from his duty to remove it by his voluntary deed. But this liability must cease with his death. A cause of action growing out of the erection

or continuance of a nuisance in his life-time will, by virtue of the statute, survive against his legal representatives, but not for the maintenance thereof subsequent to his death. Here the *gravamen* of the action is for the continuance of these ditches after Dilworth's death, and during plaintiff's occupancy. She sues for the special damages caused by the flowage complained of. She does not claim damages for the erection of the alleged nuisance, or for the direct injury to the freehold. The cause of action for which this suit was brought did not arise until the actual damage in question occurred, and the statute of limitations commenced to run from that time, and not earlier. 2 Greenl. Ev. § 433; *Delaware & Raritan Canal Co.* v. *Wright,* 21 N. J. Law, 469; Gould, Waters, §§ 412, 414. Every continuance of the nuisance or recurrence of the injury is an additional nuisance, forming in itself the subject-matter of a new action. *Duryea* v. *Mayor,* 26 Hun, 120. And it cannot be presumed that a nuisance will be continued, or the injuries repeated. *Dorman* v. *Ames, supra;* Gould, Waters, § 420. Had Dilworth lived, he might not only not have continued, but might have removed the cause of the injury complained of.

5. The cause of action in this case, then, clearly arose after the death of Joseph Dilworth, and his representatives are not liable in this action by reason of any act of their testator. The plaintiff, however, in her complaint rests her claim upon the acts of the deceased; and there is no allegation or proof that the defendants, personal representatives, had taken possession, or that they were cognizant of the condition of the premises, or the danger likely to arise from the continuance of the ditches, or in any way authorized or connected themselves therewith. They are not, therefore, liable. *Inhabitants of Oakham* v. *Holbrook,* 11 Cush. 299. On the death of the ancestor the right of possession of the realty is in the heir or devisee until the personal representatives assert their right and take possession by virtue of the statute. *Noon* v. *Finnegan,* 29 Minn. 418, (13 N. W. Rep. 197.) And the heir or other person succeeding to the possession could only be made liable after notice and request to abate a nuisance existing on the premises, unless, with knowledge of its character, he has actively interfered, or contributed to injuries re-

sulting therefrom. 1 Addison, Torts, 60 ; Angell, Water-Courses, § 403 ; *Plumer* v. *Harper*, *supra; Thornton* v. *Smith*, 11 Minn. 1, (15.) It was only by virtue of the statute (Gen. St. 1878, c. 77, § 1) that an action for damages occurring in the life-time of the ancestor survived against his legal representatives. Upon his death, plaintiff was obliged to resort to the proper notice, or a suit to abate or restrain the continuance of the alleged nuisance, or such other proceedings as she might be advised, to prevent a threatened injury. He was liable to plaintiff's grantor for any damages arising from the trespass and the construction and maintenance of the ditches, including permanent injuries, until the transfer of the land by the latter. And upon his conveyance thereof to plaintiff, Dilworth became liable to her for the damage done by the continuance thereof by him, to the time of his death, as he cannot be said to have continued them thereafter. *Eastman* v. *Amoskeag Mfg. Co.*, 44 N. H. 143, (82 Am. Dec. 201;) Gould, Waters, § 385. Otherwise, since repeated actions may be brought for recurring injuries arising from the continuance of a nuisance, and the statute of limitations does not cut them off unless a prescriptive right has attached, (*Prentiss* v. *Wood*, *supra*,) such actions might be maintained successively for the same cause against both the heir and the executors. In *Chenango Bridge Co.* v. *Lewis*, 63 Barb. 111, cited by plaintiff's counsel, the action was for damages done in the life-time of the testator, and for tolls received for nine years before his death, or by the company of which he was a stockholder, and the liability might have been extended against his executors for the receipt of tolls after his death. The case, we think, is not in conflict with the views we have expressed.

6. The defendants—foreign executors—voluntarily appeared, and agreed to litigate this action as defendants, in order to determine the question of their liability as the personal representatives of the deceased. The stipulation for this purpose is somewhat ambiguous; but it is obvious that its object was simply to consent to come in as defendants, and litigate the case upon the merits, without any proceedings in the probate court here to establish the will, or for the appointment of executors in this state, both as respects the legal liability of the deceased, or themselves as his executors, upon the al-

leged cause of action set forth in the complaint. Upon the case as presented it is clear, we think, that the plaintiff failed to establish such liability.

7. It appears that only a part of the surface water which caused the damage complained of came from the land naturally drained by the ditches constructed by the deceased, but that, after his death, other persons, of their own motion, opened a connection with the ditch on the west side of section 1, opening into a slough lying east of that section, which had filled up with water in consequence of heavy rains, and thereby the flow of water in the Dilworth ditches was so much increased as to cause the flooding of plaintiff's land to the extent complained of. Upon these facts the defendants, if liable at all in the action, would only be liable for the proper proportion of the damages caused by them. If waters are wrongfully turned upon the land of another as the result of the acts of several parties, they are all liable. It is no defence that the injury caused or wrong done by any one, standing alone, might not be a sufficient ground of complaint. If the damage caused is the combined result of several acting independently, recovery may be had severally in proportion to the contribution of each to the nuisance, and not otherwise. 1 Add. Torts, *364; Gould, Waters, §§ 222, 278, 398; *Sellick* v. *Hall*, 47 Conn. 260; *Brown* v. *McAllister*, 39 Cal. 573; *Chipman* v. *Palmer*, 77 N. Y. 51. If, however, they are acting jointly in the premises, then they may be jointly or severally sued for the entire damage. So, if the defendants had agreed, consented to, or acquiesced in the joint use of these ditches as a common outlet for the drainage of their own and the lands lying east and beyond, the rule adopted by the court making them liable for the entire damages sustained by the plaintiff might have been sustained; but, as applied to the facts in this case, it was erroneous.

Order reversed.