277 N.W.2d 27 (1979)
M. A. D., Respondent,
v.
P. R., Appellant.
No. 48693.
Supreme Court of Minnesota.
January 26, 1979.
Rehearing Denied March 14, 1979.
*28 Mark Reinhardt, St. Paul, for appellant.
William B. Randall, County Atty., Stephen C. DeCoster, Asst. County Atty., St. Paul, for respondent.
Heard before ROGOSHESKE, YETKA, and STONE, JJ., and considered and decided by the court en banc.
BRUCE C. STONE, Justice.[*]
This is an appeal from the order of the district court adjudicating appellant as the father of respondent's son born in 1961. The defense is that of laches. We affirm.
The evidence at trial abundantly supports the finding of paternity. Although respondent did not press her claim when she found she was pregnant, it was for the reason that she was bitter and ashamed, yet did not want to pressure appellant into marriage. After the birth, appellant frequently referred to himself as "daddy" in the presence of the child; he never denied paternity, nor made any indication that anyone else was the father. Indeed, there was no evidence of access by anyone else during the period of possible conception.
In 1976, respondent commenced the action when requested by the county welfare department. Although she had given the information that appellant was the father to the county when she first asked for assistance in 1963, two years after the birth of the child, the record is silent as to why the county did not proceed more promptly. Respondent gave as the reason she did not make a prompt complaint the lack of money to hire an attorney.
Appellant has married and has two children, ages 13 and 11. In 1972, he sustained serious injuries in an automobile accident and has had difficulty with his memory ever since. At trial he testified that he does not believe he is the father but cannot remember why.
The liability for the education and support of an illegitimate child is not of common law origin and is solely a product of statute. Minn.St. 257.251 et seq. In State v. Johnson, 216 Minn. 427, 13 N.W.2d 26 (1944), we held that the general six-year statute of limitations does not apply to a paternity action because the father's obligation is ongoing:
"Because at common law the father of an illegitimate child was not liable for its care, maintenance, and support, and because an obligation to provide for such a child's care, maintenance, and support is imposed upon the father by §§ 257.18 to 257.31 (§§ 3261 to 3273 with the amendments thereto appearing in the 1941 Supp.), the obligation is a liability created by statute. State v. Lindskog, 175 Minn. 533, 221 N.W. 911; Olson v. Johnson, 23 Minn. 301. Whether or not that obligation is a liability created by statute within the meaning of § 541.05(2), (§ 9191[2]), requiring an action `upon a liability created by statute' to be brought within six years, does not necessarily control decision here.
"We have laid down the rule in the analogous case, where the obligation was that of the father of a legitimate child. The obligation of a father to provide for the care, support, and education of his legitimate child during its minority is continuing in nature. Krueger v. Krueger, 210 Minn. 144, 297 N.W. 566; State v. *29 Ford, 151 Minn. 382, 186 N.W. 812; State v. Clark, 148 Minn. 389, 182 N.W. 452. During the time the obligation continues the father cannot terminate or evade it; much less can he accomplish that result by a violation of the obligation. The statute of limitations does not run against the father's breach or violation of such obligation while it continues. Knutson v. Haugen, 191 Minn. 420, 254 N.W. 464. The rule that the statute of limitations does not run until the liability has ceased to continue rests upon the principle that where the obligation is continuing in nature the breach or violation of duty continues so long as the obligation continues, and that the cause of action or penalty, as the case may be, must be deemed to be continually accruing during the entire time the obligation and the breach thereof continue.
* * * * * *
"Where, as here, a statute imposes upon the father of an illegitimate child an obligation to provide for its care, support, or education during a given period, such as during its minority, the obligation is continuing in nature. Breach or violation of that duty by the father of an illegitimate child likewise is continuing in nature, People v. Stanley, 33 Cal.App. 624, 166 P. 596; Richardson v. State, 30 Del. (7 Boyce) 534, 109 A. 124, the same as in the case of the father of a legitimate child. The statute of limitations does not run against the prosecution of an illegitimacy proceeding during the time the father is liable for the child's support. State ex rel. Washington v. Hunter, 67 Ala. 81; Kucera v. Hansen, 96 Neb. 316, 147 N.W. 686; Denham v. Watson, 24 Neb. 779, 40 N.W. 308." 216 Minn. 429, 13 N.W.2d 27.
Reaching the same general conclusion are Ortega v. Portales, 134 Colo. 537, 307 P.2d 193 (1957); and State ex rel. Davis v. Brown, 98 N.E.2d 99 (Ohio Com.Pl.1951).
Laches is a defense to an action brought after an unreasonable delay in asserting a known right, resulting in prejudice to others, as would make it inequitable to grant the relief prayed for. Fetsch v. Holm, 236 Minn. 158, 52 N.W.2d 113 (1952). The policy basis for the doctrine is to promote the peace of society. There are a number of elements the court must consider in deciding if appellant is entitled to the defense: (1) Availability of the defense as determined by the nature of the action, (2) reasons for delay, (3) prejudice, and (4) policy considerations.
Laches is an equitable doctrine which may not be available in an action at law. In Perez v. Singh, 21 Cal.App.3d 870, 97 Cal.Rptr. 920 (Cal.App.1971), a California court held laches to be unavailable because a paternity action is legal in nature, even though in that case the petition followed birth by 14 years. Minnesota, however, in In re Barlow, 152 Minn. 249, 188 N.W. 282 (1922), expanded the defense to all statutory suits because of the abolition of the distinction between law and equity.
Barlow, supra, limited the availability of the defense in another manner, however, "to any action or proceeding not governed by an express statute." 152 Minn. 252, 188 N.W. 283. In 1971, the legislature added the following limitation to the paternity statutes: "* * * The father's liabilities under this chapter for past education and necessary support of the illegitimate child are limited to a period of 4 years next preceding the commencement of an action." Minn.St. 257.255. We have concluded that this section is an "express statute" within the meaning of Barlow, supra. It reflects the same legislative concern as would an ordinary statute of limitations  that the legislature has considered the desirability of protecting the defendant from liability over an extended time period and resolved the matter by a statutory provision. Thus, laches is not available as a defense to a paternity action. Further consideration of its elements is therefore unnecessary.[1]
*30 We have examined authorities submitted by appellant and are unable to discern any instance in this or other jurisdictions in which a child has been denied support because the mother has been tardy in bringing the complaint.
Inasmuch as the appellant father's income is now limited to social security, the amount of support may be correspondingly limited, but the principle is the same: laches, if any, of a mother or of a welfare board will not defeat the rights of a minor child to support from his adjudicated father.[2]
Affirmed.
YETKA, Justice (concurring specially).
While I agree that the Johnson case, decided in 1944, requires affirmance, I believe the decision in the Johnson case was clearly erroneous. In a paternity action under the old statute, existing prior to the latest amendments in 1971, the defendant was treated and tried like a criminal defendant even though supposedly the Civil Rules of Evidence and Procedure were to be used during the trial. Since 1971, a paternity action has clearly been a civil action, procedurally as well as substantively. Thus, the general 6 year statute of limitations should apply.
Under the Johnson case, since the age of majority is 18, a mother of an illegitimate child could wait almost 18 years before bringing a claim of paternity against a defendant. The whole purpose of the statute of limitations is to prevent stale claims, spurious claims, which are more easily brought after the elapse of a period of time because witnesses die or become lost and other evidence becomes unavailable. While it is advantageous to the child and to the public to have paternity established at any time, nevertheless, there ought to be some limit during which such a claim can be brought. An equitable solution, in my opinion, would be that while the 6 year statute does not bar the bringing of a paternity suit to establish and determine paternity, the 6 year statute bars any liability for the adjudicated father in terms of support unless it is brought within 6 years of the birth of the child. Limiting the purpose of such an action to determine paternity alone would discourage spurious actions and actions forced by government upon the mother, such as undoubtedly is the case here.
OTIS, Justice (concurring specially).
I agree with the concurring opinion of Mr. Justice YETKA.
TODD, Justice (concurring specially).
I join in the concurring opinion of Mr. Justice YETKA.
WAHL, Justice (concurring specially).
I agree with the concurring opinion of Mr. Justice YETKA.
SHERAN, C. J., took no part in the consideration or decision of this case.
NOTES
[*] Acting as Justice of the Supreme Court by appointment pursuant to Minn.Const. art. 6, § 2, and Minn.St. 2.724, subd. 2.
[1] Even if laches were available, we are convinced that given the facts of this case, the equities of the father would not exceed those of the child, who is the ultimate beneficiary.
[2] Because appellant has not raised the issue of due process, we make no comment upon the effect of an adequate showing that memory impairment has occurred to the extent that a fair trial is impossible.