894 P.2d 730

Samuel B. SCHURGIN, an individual, Plaintiff/Appellant,

v.

AMFAC ELECTRIC DISTRIBUTION CORPORATION, dba AMFAC Electric Supply, a Hawaii corporation; Consolidated Electrical Distributors, Inc., a Delaware corporation, Defendants/Appellees.

Samuel B. SCHURGIN, an individual, Plaintiff/Appellee,

v.

AMFAC ELECTRIC DISTRIBUTION CORPORATION, dba AMFAC Electric Supply, a Hawaii corporation; Consolidated Electrical Distributors, Inc., a Delaware corporation, Defendants/Appellants.

Nos. 2 CA–CV 95–0001, 2 CA–CV 95–0042.

Court of Appeals of Arizona, Division 2, Department B.

April 28, 1995.

---

Robbins & Green, P.A. by Sarah N. McGiffert, Phoenix, for Schurgin.

Streich Lang, P.A. by Laurence J. De Respino, Phoenix, for Amfac Elec. Distribution Corp.

Ayers & Brown, P.C. by Thomas G. Luikens, Phoenix, for Consol. Elec. Distributors, Inc.

## OPINION

DRUKE, Chief Judge.

Samuel Schurgin appeals from the trial court's dismissal of his claim for reimbursement against Amfac Electric Distribution Corp. (Amfac) and Consolidated Electrical Distributors, Inc. (CED). By separate appeal, Amfac and CED challenge the trial court's dismissal without prejudice of Schurgin's remaining claims against them. The appeals have been consolidated.

Schurgin notified the Arizona Department of Environmental Quality (DEQ) in November 1989 that underground storage tanks on his property had corroded and leaked gasoline into the soil. The tanks had been installed between 1958 and 1970 by Shell Oil Company, then Schurgin's tenant. They had been used by Shell and subsequent tenants Amfac and CED until 1989. At the time Schurgin discovered the contamination, the property was not under lease.

In January 1990, DEQ instructed Schurgin to clean up the contamination according to the requirements of A.R.S. § 49–1005. When Schurgin later discovered contamination in the groundwater, DEQ again ordered him to take corrective action. In September 1991, DEQ decided that Schurgin had "failed and refused to take adequate corrective action" and issued a compliance order that established deadlines for him to finish the cleanup.

In October 1990, Schurgin filed but never served a three-count complaint against Shell, alleging in part a claim for reimbursement of corrective costs as provided by A.R.S. § 49–1019(A). Schurgin amended his complaint in May 1991 to include Amfac and CED as defendants and to add claims for breach of lease, environmental nuisance, nuisance, and waste. After they were served, Amfac and CED moved to dismiss the complaint entirely, or in the alternative, to dismiss the nuisance and reimbursement claims. The trial court granted the alternate motion,[1] ruling that the amended complaint did not relate back to the original filing. *See* Ariz.R.Civ.P. 15(c), 16 A.R.S. The reimbursement claim, which the court apparently presumed had accrued by January 1990, was consequently dismissed as time-barred.[2] Schurgin's subsequent motion for reconsideration was denied.

1. Schurgin has not appealed from the dismissal of his nuisance claim.

2. Schurgin conceded solely for purposes of argument in his response to the motion to dismiss that the one-year statute of limitations in A.R.S. § 12–541(3) applied to his reimbursement claim. We assume, without deciding, that the statute applies.

Shell later moved for summary judgment of the remaining claims and Amfac and CED joined in the motion. Schurgin did not file a response; instead, he moved to dismiss the claims without prejudice pursuant to Ariz. R.Civ.P. 41(a)(2). The court granted the motion, directing each party to bear its costs and attorney's fees. These consolidated appeals followed.

### The Reimbursement Action

A.R.S. § 49–1019(A) creates a private cause of action for anyone who takes corrective action to remove petroleum leaked from an underground storage tank, permitting reimbursement from anyone who caused or contributed to the contamination. The statute makes contributors strictly liable, but is silent as to when the cause of action accrues.[3]

▮ Amfac and CED argue that Schurgin's reimbursement action accrued in November 1989, when he discovered the leaking tanks,[4] or in January 1990, when DEQ ordered the cleanup. We disagree. A reimbursement claim, by its nature, cannot be triggered when the injury is merely discovered or liability is established, but only when payment has been made. To reimburse is "[t]o pay back, to make restoration, to repay that expended; to indemnify, or make whole." *Black's Law Dictionary* 1287 (6th ed. 1990). It is " 'repaying or making good the amount paid out.' " *Oliveira v. Pereira,* 414 Mass. 66, 605 N.E.2d 287, 291 (1992) (quoting *Boston v. Commonwealth,* 322 Mass. 177, 76 N.E.2d 121, 122 (1947)). Reimbursement is similar to restitution, *see One Wheeler Road Associates v. Foxboro Co.,* 843 F.Supp. 792 (D.Mass.1994), to contribution, *see Nikolous v. Superior Court,* 157 Ariz. 256, 756 P.2d 925 (1988), and to indemnification against loss or damage, *see INA Insur-*

ance Co. of North America v. Valley Forge Insurance Co., 150 Ariz. 248, 722 P.2d 975 (App.1986). *See also Hays v. Mobil Oil Corp.,* 736 F.Supp. 387 (D.Mass.1990), *aff'd in part, vacated in part,* 930 F.2d 96 (1st Cir.1991). Such claims generally arise when plaintiffs have "actually paid the obligation for which [they are] found liable." *INA Insurance Co.,* 150 Ariz. at 253, 722 P.2d at 980. "[T]o be reimbursed, the plaintiff must have paid the sum due." *Oliveira,* 605 N.E.2d at 291 (construing Massachusetts Oil and Hazardous Material Release Prevention Act). Section 49–1019(A) itself states that payment is required to sustain a cause of action in that it only allows a reimbursement action to be brought by one "who takes a corrective action" or one "from whom costs are recovered by this state." The statute also imposes on the person seeking reimbursement "the burden of demonstrating that the corrective action costs incurred *were* reasonable." (Emphasis added.)

We therefore hold that the private cause of action created by § 49–1019(A) accrues when the person actually pays the costs of cleanup, rather than when the contamination is discovered or when cleanup is ordered by DEQ and, thus, successive actions may be brought each time payment is made. *See Anonymous Wife v. Anonymous Husband,* 153 Ariz. 573, 739 P.2d 794 (1987).

### Voluntary Dismissal

▮ Amfac and CED raise three issues regarding the dismissal of Schurgin's other claims without prejudice. First, Amfac claims that the trial court abused its discretion in granting the dismissal without prejudice. Second, CED claims that the court abused its discretion by granting the motion

---

3. A.R.S. § 49–1019(A) provides:

> An owner or an operator of an underground storage tank or any other person who takes a corrective action for a release of petroleum from the underground storage tank pursuant to § 49–1005 or from whom costs are recovered by this state for a release of petroleum from an underground storage tank pursuant to § 49–1017 may bring an action in superior court against a person who caused or contributed to the release to require that person to reimburse him for the reasonable costs of the

> corrective action. The person seeking reimbursement shall have the burden of demonstrating that the corrective action costs incurred were reasonable.

4. The discovery rule provides that an action accrues "when the plaintiff discovers or by the exercise of reasonable diligence should have discovered that he or she has been injured by [the] defendant's negligent conduct." *Lawhon v. L.B.J. Int'l Supply, Inc.,* 159 Ariz. 179, 183, 765 P.2d 1003, 1007 (App.1988).

without a hearing. We decline to address either claim, however, because they are raised for the first time on appeal and are therefore waived. *Richter v. Dairy Queen of Southern Arizona, Inc.*, 131 Ariz. 595, 643 P.2d 508 (App.1982). Moreover, we are unpersuaded that the trial court's failure to hold a hearing on the motion to dismiss or the dismissal itself deprived Amfac or CED of a substantial legal right. *Goodman v. Gordon*, 103 Ariz. 538, 447 P.2d 230 (1968) (voluntary dismissal without prejudice permitted unless substantial right or advantage would be lost *or* rendered less effective).

Finally, both Amfac and CED challenge the trial court's denial of their applications for costs and attorney's fees. However, because of our reversal of the court's dismissal of Schurgin's reimbursement claim, an award of costs and attorney's fees must necessarily abide the resolution of that claim in the trial court in order for the prevailing party to be determined.

Reversed and remanded for further proceedings consistent with this opinion.

ESPINOSA, P.J., and HATHAWAY, J., concur.