**UNION PACIFIC RAILROAD COMPANY, Plaintiff,**

v.

**REILLY INDUSTRIES, INC., Defendant.**

**No. CIV. 4–95–960 DSD JMM.**

United States District Court,
D. Minnesota,
Fourth Division.

Feb. 9, 1998.

---

Richard Ihrig, Sarah D. Halvorson, Kim Ruckdaschel–Haley, Steven D. Kelley, Lindquist & Vennum, Minneapolis, MN, for Plaintiff.

Steven J. Wells, Becky A. Comstock, Alexandra B. Klass, Dorsey & Whitney, Minneapolis, MN, for Defendant.

## ORDER

DOTY, District Judge.

This matter is before the court on the cross motions of plaintiff and defendant for summary judgment on plaintiff's state law claims. Based on a review of the file, record and proceedings herein, and for the reasons stated, the court denies the cross motions for summary judgment.

## BACKGROUND

This case involves a dispute between plaintiff Union Pacific Railroad Company ("Union Pacific") and defendant Reilly Industries, Inc. ("Reilly"). Union Pacific seeks injunctive and compensatory relief for past and future costs to clean up contamination resulting from the former creosoting operations of Republic Creosoting Company ("Republic"),

the predecessor company of Reilly. On November 3, 1997, this court issued an order on plaintiff's and defendant's cross motions for summary judgment. *Union Pacific Railroad Co. v. Reilly Industries, Inc.,* 981 F.Supp. 1229 (D.Minn.1997). In that decision, this court granted defendant's motion for summary judgment on plaintiff's federal law claims brought under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.,* and dismissed the CERCLA claims with prejudice. This court dismissed plaintiff's supplemental state law claims without prejudice, determining that the plaintiff sought the jurisdiction of this court based on federal question jurisdiction. By Order dated January 12, 1998, this court granted plaintiff's motion for reconsideration of the dismissal of the state law claims and determined that this court had jurisdiction over plaintiff's state law claims pursuant to diversity of citizenship. This court vacated in part the Order dated November 3, 1997, to the extent that it dismissed plaintiff's state law claims without prejudice. The court now considers the cross motions of plaintiff and defendant with respect to the state law claims. Because the court thoroughly discussed the factual background of this case in the Order dated November 3, 1997, the court will not repeat the factual background, but rather incorporates by reference the factual background as developed in the Order dated November 3, 1997.

Union Pacific moves for summary judgment on its claims under the Minnesota Environmental Response and Liability Act ("MERLA"), Minn.Stat. § 115B.01 *et seq.,* nuisance, trespass, negligence, strict liability, and waste. Reilly moves for summary judgment on all of Union Pacific's state law claims. Reilly argues that Union Pacific's state law claims are barred by the applicable statute of limitations and the doctrine of laches. In the alternative, Reilly argues that Union Pacific is not entitled to summary judgment on its MERLA claim because there are genuine issues of material fact; that Union Pacific cannot maintain a nuisance claim for damage to its own property; and that Union Pacific cannot maintain its trespass and waste claims because Republic's

activities cannot be considered an unauthorized invasion or constitute unlawful conduct.

## DISCUSSION

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard mirrors the standard for judgment as a matter of law under Federal Rule of Civil Procedure 50(a), which requires the trial court to enter judgment as a matter of law if there can be but one reasonable conclusion as to the verdict. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material only when its resolution affects the outcome of the case. *Id.* at 248, 106 S.Ct. 2505. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252, 106 S.Ct. 2505. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249, 106 S.Ct. 2505.

On a motion for summary judgment, the court views the evidence in favor of the nonmoving party and gives that party the benefit of all justifiable inferences that can be drawn in its favor. *Id.* at 250, 106 S.Ct. 2505. The nonmoving party, however, cannot rest upon mere denials or allegations in the pleadings. Nor may the nonmoving party simply argue that facts supporting its claim will be developed later or at trial. Rather the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If reasonable minds could differ as to the import of the evidence, judgment as a matter of law should not be granted. *See Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505. If a plaintiff fails to support an essential element of a claim, however, summary judgment must issue because a complete failure of proof regarding an essential element renders all other facts immateri-

al. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. With this standard at hand, the court addresses the cross motions for summary judgment.

■ Reilly asserts that all of plaintiff's state law claims are barred by the applicable statute of limitations. Under MERLA, "[n]o person may recover pursuant to sections 115B.01 to 115B.15 unless the action is commenced within six years from the date when the cause of action accrues." Minn.Stat. § 115B.11. The statute states when a cause of action accrues to recover damages for death, personal injury or disease, but the statute does not state when a cause of action accrues to recover response costs. Reilly asserts that the cause of action accrues according to the same principles as the common law claims. Under Minnesota law, a cause of action accrues and the statute of limitations begins to run when the plaintiff could file its claim in a court of law without dismissal for failure to state a claim. *See Dalton v. Dow Chemical Co.,* 280 Minn. 147, 158 N.W.2d 580, 584 (1968). Reilly asserts that Union Pacific's MERLA claim accrues when the negligent act occurs and plaintiff suffered some injury. *See id.* at 584–85; *see also Continental Grain Co. v. Fegles Constr. Co., Inc.,* 480 F.2d 793 (8th Cir.1973). Under Minnesota law, it is not necessary for the final or ultimate damages to be known or predictable, rather the statute begins to run when some damage occurs. *See Dalton,* 158 N.W.2d at 584–85.

In this case, Union Pacific filed its action on December 22, 1995. On March 31, 1994, the parties entered into a one-year tolling agreement which extended the limitations period by one year for any claims against Reilly involving the contamination at the site. Taking the tolling agreement into consideration and applying a six-year statute of limitations, Reilly asserts that a claim which accrued prior to December 22, 1988, would be time-barred. Reilly argues that if Union Pacific learned, prior to December 22, 1988, of the existence of any contamination at the site which would result in the expenditure of response costs, its MERLA claim is time-barred. Reilly states that the very latest

that Union Pacific could have learned of the fact of contamination at the site was on January 7, 1988, when the Minneapolis Community Development Agency ("MCDA") sent a copy of the Barr Engineering report entitled "Preliminary Investigation for Proposed Intercampus Transitway" ("Barr Report") to Virgil Steinhoff, Manager of Industrial Development at Chicago and North Western Railway Company ("CNW").[1] Thus, Reilly argues, plaintiff's MERLA claim expired on January 7, 1995, almost a year prior to the time Union Pacific filed its action.

Union Pacific argues that Reilly is misguided in its position. Union Pacific asserts that a claim to recover response costs under section 115B.04, cannot accrue until the response costs are incurred. Union Pacific relies on *One Wheeler Road Associates v. Foxboro Co.,* 843 F.Supp. 792 (D.Mass.1994), and *Schurgin v. Amfac Elec. Distribution Corp.,* 182 Ariz. 187, 894 P.2d 730 (App.1995), to support its position. In *One Wheeler* and *Schurgin,* the courts determined that the proper accrual date for seeking reimbursement for cleanup costs was when the costs were incurred. In *Schurgin,* the court analyzed an Arizona statute which provided a cause of action for the "reimbursement" of the reasonable costs of corrective action from a person who caused or contributed to the contamination. *Schurgin,* 894 P.2d at 732. The court reasoned that "a reimbursement claim, by its nature, cannot be triggered when the injury is merely discovered or liability is established, but only when payment has been made." *Id.* The state court held that "the private cause of action for reimbursement accrues when the person actually pays the costs of cleanup, rather than when the contamination is discovered or when cleanup is ordered by DEQ and, thus, successive actions may be brought each time payment is made." *Id.* In *One Wheeler,* the federal district court interpreted a Massachusetts statute which provided a cause of action for recovery of response costs and recovery of damages to real property. *See One Wheeler,* 843 F.Supp. at 798. Prior to 1992, the statutory provision did not provide

---

1. Union Pacific acquired CNW in 1995.

for an express statute of limitations. The court interpreted the statute and applied the general statute of limitations applicable to tort claims. In determining when the cause of action accrued, the court distinguished between recovery for reimbursement of response costs and recovery for economic loss. *Id* . at 797–98. In that case, the court concluded that the proper accrual date for recovery of response costs was when costs were incurred, and that the accrual date for recovery of damage to property was when the plaintiff discovered the damage to its property and knew or reasonably should have known that the defendant was the cause of the damage. *Id.* Thus, Union Pacific asserts that it cause of action for recovery of response costs did not accrue until its costs were incurred. Although Union Pacific's position is compelling, the court is unpersuaded by its argument.

■ Although MERLA distinguishes between liability for response costs and liability for economic loss, death, personal injury and disease, the court concludes that the distinction does not require separate accrual dates. In *Minnesota Mining and Mfg. Co. v. Travelers Indem. Co.*, 457 N.W.2d 175 (Minn. 1990), the Minnesota Supreme Court commented on the costs associated with cleaning up contamination. In that case, the Minnesota Supreme Court was presented certified questions from the federal district court to decide "whether the costs of complying with directives issued by state and federal environmental agencies to clean up groundwater contamination caused by pollution are covered under the insureds' comprehensive general liability insurance policies." *Id.* at 176–77. Although addressing response costs in an entirely different context, the court likened the costs associated with cleaning up a contamination to consequential damages flowing from the direct damage caused to the environment. *Id.* at 182. The court also observed that "the costs of restoring property to its original condition has been a long-recognized measure of damages in common law pollution cases," and that the "MERLA clean up requirement did not expand the common law remedy for pollution of property ...." *Id.* at 183–84; *see also Hustad Development Corp. v. Browning–Ferris Indus-*

*tries,* C5–94–2241, 1995 WL 254385, at *2 (Minn.Ct.App. May 2, 1995) (applying same accrual standard for common law claims and MERLA claim). In addition to providing recovery for a damage similar to a damage recovered in tort, the MERLA provision does not limit a party to liability for costs it has previously incurred. *See* Minn.Stat. § 115B.04, subd. 1; *see also State of Minnesota v. Kalman W. Abrams Metals, Inc., et al.,* Civ. No. 4–96–CV–5, slip op. at 12 (D.Minn. August 22, 1997) (citing section 115B.04, and recognizing that a party may sue before any response costs are incurred at all). Because the statute does not provide for an accrual date for the recovery of response costs, the court concludes that the same accrual date applies under MERLA as provided for under Minnesota common law tort for damages to real property. Thus, the court will analyze plaintiff's MERLA claim with plaintiff's other state law claims.

■ The parties recognize that the six year statute of limitations period in section 541.05 of the Minnesota Statutes applies to Union Pacific's common law claims for nuisance, trespass, negligence, strict liability, waste and breach of contract. *See* Minn. Stat. § 541.05; *see also Soo Line R.R. Co. v. B.J. Carney & Co.,* 797 F.Supp. 1472, 1487 (D.Minn.1992) (discussing the governing statute of limitations and the discovery rule for the accrual of state law claims). Union Pacific argues that under a "discovery rule," a plaintiff's causes of action accrue when the plaintiff discovers both an injury and the likely cause of the injury. *See Dalton,* 158 N.W.2d at 585–86. In this case, plaintiff and defendant disagree as to when plaintiff knew or reasonably should have known of its injury and the likely cause. Defendant argues that plaintiff knew or reasonably should have known, at the latest, in January 1988. Plaintiff argues that the earliest it should have known both that it would incur response costs and the cause of its injury was in June 1990. The court concludes that a genuine issue of fact exists which precludes summary judgment.

As an alternative to its accrual argument, plaintiff argues that its common law claims

are timely under the "continuing wrong doctrine." Union Pacific relies on the rule stated in the syllabus by the court in *Skinner v. Great Northern R.R. Co.*, 129 Minn. 113, 151 N.W. 968 (1915):

> When injury to land is a continuing one, but subject to remedy and not in its nature permanent, a recovery may be had for damages accruing within six years of suit brought, though the cause of the injury arose prior to such six-year period; and in such case one who purchases land after the cause of the injury arose may recover damages accruing while he was owner, not antedating the six-year period.

*Id.* at 967. Union Pacific asserts that "[t]he continuous leaching on the Site of the creosote from Reilly's operations constituted a continuous injury to the land." Plaintiff's Memorandum in Support of Motion at 35. Plaintiff further argues that the fact that the site has been cleaned up indicates that the damage caused by the contamination was temporary rather than permanent; thus, Union Pacific argues, the injury was continuous.

▪ The determination of whether a trespass or nuisance is continuing, or a single permanent trespass depends on the character of the invasion and the structures erected. *See Northern States Power Co. v. Franklin*, 265 Minn. 391, 122 N.W.2d 26 (1963). A nuisance is of a permanent character if it "will continue without change, unless some human agency interposes, and its continuance will necessarily result in injury, but one action can be maintained, and the recovery allowed is for all damages, past and prospective." *See Sloggy v. Dilworth*, 38 Minn. 179, 36 N.W. 451, 454 n. 1 (1888) (distinguishing between continuing and permanent nuisances); *see also Heath v. Minneapolis, St. P. & S. S. M. R. Co.*, 126 Minn. 470, 148 N.W. 311 (1914) (considering whether the whole injury results from the original wrongful act, or from the wrongful continuance of the state of facts produced by such act).

Reilly argues that the "continuing wrong" doctrine has no application to this case. Reilly cites *Carpenter v. Texaco, Inc.*, 419 Mass. 581, 646 N.E.2d 398 (1995), in support of its position. In *Carpenter*, the defendant

Texaco owned a gasoline station, at which an underground storage tank leaked contaminants into the ground. The storage tank was removed, but the contaminants remained present on the property. The plaintiff property owners argued that the continued presence of gasoline on their properties amounted to a continuing trespass and continuing nuisance, and therefore, their claims were not barred by the statute of limitations. The Massachusetts Supreme Court distinguished between a single encroachment resulting in permanent harm, and repeated or recurrent wrongs involving new harm to property on each occasion. *Id.* at 399. The *Carpenter* court determined that the gasoline on the plaintiffs' property was the consequence of tortious conduct and of seepage that occurred prior to the statutory period.

Under Minnesota law, courts have found a continuing trespass or a continuing nuisance when a recurrence of conduct or injury is involved. *See, e.g., Northern States Power*, 265 Minn. at 397, 122 N.W.2d 26 (discussing the failure to remove a structure upon a demand for removal as a wrongful act and continuing trespass); *Skinner*, 151 N.W. at 968 (discussing a structure which obstructed the natural flow of water and caused the water to flood plaintiffs' land); *Heath*, 148 N.W. at 312 (recognizing that the defendants' construction of an embankment was a continuing trespass in that the invasion of plaintiff's premises was in the nature of separate, recurring acts of trespass because every heavy rainfall would cause large quantities of sand to be deposited on plaintiff's property); *Bowers v. Mississippi & R. R. Boom Co.*, 78 Minn. 398, 81 N.W. 208, 209 (1899) (recognizing that the maintenance of a log pile which caused recurring damages to property was in the nature of a continuing trespass or nuisance in which successive actions could be brought for the damages as they accrue); *Sloggy*, 36 N.W. at 452 (determining that ditches which caused the overflow of surface water were a continuing nuisance).

▪ In this case, Republic operated a wood creosoting treatment facility at the site until approximately 1917. The facility included "a creosoting house equipped with retort kilns, large above ground tanks for

creosoting oils, settling basins, coal bins, saw mill, storage shed, lumber shed, and loading facilities." Affidavit of Rodney M. Jasmer, Ex. 1 at ¶ 2. By 1937, the Republic plant was no longer in existence. *Id.*, Ex. 2 at UP 13350. Union Pacific asserts that PAH-contaminated sludge and wastewater were disposed of on the site. Although Union Pacific asserts that there was continuous leaching on the site of creosote from Reilly's operations, any disposal or leakage occurred prior to December 22, 1988. The continuous presence of the contaminants is insufficient to constitute a recurring damage. The disposal of creosote was in the nature of a permanent tort, rather than a continuing tort. To the extent that leakage from storage tanks or basins could constitute a continuing wrong, such wrong ceased when the storage tanks and settling basins no longer existed. There is no evidence of contamination or damage as a consequence of conduct or events which recurred on or after December 22, 1988. Thus, the court agrees with defendant that the "continuing wrong" doctrine is inapplicable to plaintiff's claims.

▆▆▆▆ In addition to the statutes of limitations, defendant argues that the doctrine of laches bars plaintiff's state law claims. The doctrine of laches involves a determination of " 'whether there has been such an unreasonable delay in asserting a known right, resulting in prejudice to others, as would make it inequitable to grant the relief prayed for.' " *Klapmeier v. Town of Center of Crow Wing*, 346 N.W.2d 133, 137 (Minn.1984) (quoting *Fetsch v. Holm*, 236 Minn. 158, 52 N.W.2d 113, 115 (1952)). The purpose of laches is " 'to prevent one who has not been diligent in asserting a known right from recovering at the expense of one who has been prejudiced by the delay.' " *Klapmeier*, 346 N.W.2d at 137 (quoting *Aronovitch v. Levy*, 238 Minn. 237, 56 N.W.2d 570, 574 (1953)). In addition to prejudice, the court considers the availability of the defense as determined by the nature of the action, the reasons for delay, and policy considerations. *See M.A.D. v. P.R.*, 277 N.W.2d 27, 29 (Minn.1979). The policy basis for the doctrine is to promote the peace of society. *Id.* Plaintiff asserts that it notified Reilly on August 17, 1990, of the contamination at the Republic site. Reilly

chose not to participate in the cleanup activities. Union Pacific claims that Reilly has failed to demonstrate that it was prejudiced and, as a matter of law, has no valid laches defense to Union Pacific's claims. The court agrees. The defendant has not shown sufficient prejudice for the doctrine of laches to bar plaintiff's state law claims.

▆▆▆▆ With respect to plaintiff's nuisance claim, defendant argues that the doctrine of nuisance is limited to interference with the enjoyment of neighboring property. In this case, the contamination occurred on the same property for which plaintiff seeks recovery. Although as a general matter, a private nuisance resolves conflicts between neighboring or adjacent landowners, the Minnesota statute does not impose such limitation:

> Anything which is injurious to health, or indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, is a nuisance. An action may be brought by any person whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance, and by the judgment the nuisance may be enjoined or abated, as well as damages recovered.

Minn.Stat. § 561.01. An owner of a nonpossessory estate can recover in an action for private nuisance. *See, e.g., Graham Oil Co. v. BP Oil Co.*, 885 F.Supp. 716 (W.D.Pa.1994) (quoting Restatement (Second) of Torts § 821E); *Arawana Mills Co. v. United Technologies Corp.*, 795 F.Supp. 1238, 1250 (D.Conn.1992). Union Pacific may maintain a nuisance claim even though the claim does not involve adjacent property of neighboring property holders.

▆▆▆▆ With respect to plaintiff's trespass and waste claims, defendant argues that plaintiff's claims must fail because Republic's creosoting operations were a legal commercial enterprise conducted with the full knowledge and consent of Union Pacific's predecessor. Union Pacific argues that the release of creosote and resulting contamination supports its state law claims even though Republic's activities were lawful because Repub-

lic exceeded its authority. The common law claims of trespass, nuisance, and waste encompass the infringement of legal rights or interests in property notwithstanding legal conduct. *See, e.g., Lhotka v. United States,* 114 F.3d 751 (8th Cir.1997). Summary judgment on this basis is inappropriate.

## CONCLUSION

Based·on the foregoing, **IT IS HEREBY ORDERED** that plaintiff's and defendant's cross motions for summary judgment on plaintiff's state law claims are denied (Doc. No. 40).