STATE of Minnesota, by its Attorney General, Mike HATCH, Appellant,

v.

EMPLOYERS INSURANCE OF WAUSAU, a Mutual Company, Respondent,

Home Insurance Company, Respondent,

Travelers Casualty and Surety Company, Respondent,

The Travelers Indemnity Company et al., Respondents.

No. C5–01–1904.

Court of Appeals of Minnesota.

May 21, 2002.

Mike Hatch, Attorney General, Mark B. Levinger, Assistant Attorney General, St. Paul, MN; and William F. Greaney, admitted pro hac vice, Covington & Burling, Washington, DC, for appellant.

Scott Ryskoski, Charles A. Gross, Shawn Raiter, Darron Knutson, Larson King L.L.P., St. Paul, MN, for respondent Employers Insurance of Wausau, a Mutual Company.

Eric Magnuson, Robert B. Jaskowiak, Melissa Hortman, Rider Bennett Egan & Arundel, L.L.P., Minneapolis, MN, for respondent Home Insurance Company.

Andrew S. Amer, Mary Beth Forshaw, Michael S. Komar, Jerauld E. Brydges, Simpson Thatcher & Bartlett, New York, NY; and Charles E. Spevacek, Stacy A. Broman, Meagher & Geer P.L.L.P., Minneapolis, MN, for respondent Travelers Casualty & Surety Company and respondents Travelers Indemnity Company et al.

Laura A. Foggan, Karalee C. Morell, Wiley Rein & Fielding L.L.P., Washington, DC; and Dwight G. Rabuse, Nelson L. Peralta, Livgard & Rabuse, P.L.L.P., Minneapolis, MN, for amici curiae Insurance Environmental Litigation Association and The Insurance Federation of Minnesota.

Considered and decided by HANSON, Presiding Judge, SCHUMACHER, Judge, and PORITSKY, Judge.

## OPINION

PORITSKY, Judge.*

The state appeals from the district court's grant of respondents' motion for

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

summary judgment. The district court ruled that the state's claims are time-barred by the statute of limitations provision of the Minnesota Environmental Response and Liability Act (MERLA). On appeal, respondents filed notices of review, asking this court to review a prior district court order denying their motions for summary judgment on numerous constitutional grounds. Additionally, respondent Home Insurance Co. (Home) challenges an order denying its motion for partial summary judgment concerning a settlement agreement it had previously negotiated with Ford Motor Company. We affirm in part, reverse in part, and remand.

## FACTS

The state commenced this action pursuant to the Minnesota Landfill Cleanup Act (LCA) and the cost-recovery provisions of the Minnesota Environmental Response and Liability Act (MERLA). The LCA permits the state to bring a direct action against respondent insurers to recover response costs[1] incurred by the state for cleaning up two landfills located in Oak Grove and East Bethel, Minnesota. *See* Minn.Stat. §§ 115B.39–.445 (2000).

MERLA is Minnesota's legislative solution to problems arising from the release of hazardous substances into the environment. The primary purposes of MERLA are:

> (1) to impose strict liability on those responsible for harm caused by release of hazardous substances; (2) to allow the state to clean up contamination and collect costs later; and (3) to fund state cleanup activity.

*Musicland Group, Inc. v. Ceridian Corp.*, 508 N.W.2d 524, 529 (Minn.App.1993), *review denied* (Minn. Jan. 27, 1994). MERLA was modeled after the federal Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA). *Westling v. County of Mille Lacs*, 581 N.W.2d 815, 817 n. 1 (Minn. 1998).

The Minnesota Pollution Control Agency (MPCA) is the agency responsible for implementing MERLA. Minn.Stat. §§ 115B.02, subd. 3; 115B.17 (2000). MERLA requires the MPCA to identify contaminated sites in the state and the parties who are potentially responsible for the contamination (the "potentially responsible parties"—PRPs). Minn.Stat. §§ 115B.17, subds. 1, 3, 13; 115B.03, subd. 1 (2000). MERLA authorizes the MPCA to take remedial action if, after requesting the PRPs to take such action, the MPCA determines that the PRPs will not take the action in the manner or within the time requested. Minn.Stat. § 115B.17, subd. 1. When the MPCA spends public money to take a response action, MERLA authorizes the MPCA to recover its costs from the PRPs. *Id.*, subd. 6.

MERLA was amended in 1998 to establish the accrual period for actions seeking recovery of response costs. 1998 Minn. Laws ch 341, § 2. Such actions must be brought within six years after commencement of physical on-site construction of a response action. Minn.Stat. § 115B.11, subd. 2(a) (2000).

The LCA was enacted in 1994 to create a more effective and less costly way for the state to cleanup landfills by authorizing the state to assume direct responsibility for remediating certain closed landfills. Minn.Stat. § 115B.40, subd. 7(b)(1). Because the state assumes the responsibility for the cleanup on behalf of a PRP, the state is permitted to recover costs, in part, through any existing insurance coverage a

---

**1.** Response costs are the costs of actions implemented to abate or remedy a release or threatened release of hazardous substances in order to protect the public health and environment. Minn.Stat. § 115B.02, subds. 15–18 (2000).

PRP may have acquired. Minn.Stat. §§ 115B.40–.41, 115B.441. To ensure the state's right to recover response costs, the LCA included a provision suspending the statute of limitations for such cost-recovery actions until 2004. Minn.Stat. § 115B.40, subd. 8. The LCA was amended in 1996 to permit the state to file a direct action against the responsible party's insurer. 1996 Minn. Laws ch. 370, §§ 1–5 (codified at Minn.Stat. §§ 115B.441–.445).

In the present case, following extensive discovery, respondents moved for summary judgment challenging the constitutionality of the LCA. On June 13, 2001, the district court denied respondents' motions. Respondents, via notice of review, ask this court to review the denial of their motions.

On June 18, 2001, respondents filed a second summary judgment motion, arguing that the state's claims were barred by the statute of limitations. The district court granted respondents' motion, finding that the MERLA statute of limitations as originally enacted in 1983 barred the state's cost-recovery claims. The court applied the discovery-accrual rule, under which a cause of action accrues when a party discovers facts giving rise to the cause of action. Because the state had knowledge of the pollutants in East Bethel in 1982 and in Oak Grove in 1984, the court found that the state's claims, brought in February of 2000, were time barred in 1988 and 1990 (prior to the passage of the LCA and its provision temporarily suspending the statute of limitations). The state appeals.

Respondent Home Insurance Company challenges the district court's denial of its separate summary judgment motion concerning a settlement agreement signed by Ford Motor Company (Ford). The agreement resolved Ford's claims for coverage under policies issued by Home for Ford's liability at several hazardous-waste sites around the country. The district court denied Home's motion because Ford failed to procure the state's approval prior to entering the settlement agreement as required by Minn.Stat. § 115B.444, subd. 2.

## ISSUES

1. Does the statute of limitations provision in MERLA as enacted in 1983 bar the state from recovering response costs for cleaning up contaminated landfills?

2. Do the amendments to the Minnesota Landfill Cleanup Act constitute an impairment of contracts in violation of the Minnesota and U.S. Constitutions?

3. Does the federal CERCLA preempt the Minnesota Landfill Cleanup Act?

4. Do the amendments to the Minnesota Landfill Cleanup Act violate the Commerce Clause of the Minnesota and U.S. Constitutions?

5. Does the settlement, release, and policy buy-back agreement between Home Ins. Co. and Ford preclude the state's recovery against Home Ins. Co. under the Minnesota Landfill Cleanup Act?

## ANALYSIS

"On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the lower courts erred in their application of the law." *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990) (citation omitted). No genuine issue of material fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 69 (Minn.1997) (alteration in original) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). "[T]he reviewing court must view the evidence in the light most favorable to the party against whom judgment was grant-

ed." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993) (citation omitted). The state has made a showing, in the affidavit of Thomas C. Newman, that the MPCA first incurred environmental-response costs related to the construction of remedial action at the East Bethel Landfill on October 31, 1995, and at the Oak Grove Landfill on April 17, 1996. Although these facts are not beyond dispute,[2] viewing the evidence in the light most favorable to the state for the purposes of this appeal, we accept the state's facts as true.

## I.

■ The state argues that the district court's application of the discovery-accrual rule is erroneous. First, the state argues that its claims are timely under the amended MERLA statute of limitations provision that existed when the state brought this action. Second, the state argues that even under the statute prior to its amendment, the state's claims are timely. Respondents argue: (1) the amendments to MERLA do not act to revive the state's claims, and (2) under the original provisions of MERLA, the district court

was correct in applying the discovery-accrual rule and barring the state's claims. We agree with the state's second argument and conclude that, under MERLA as originally enacted, that is, prior to its amendment, the state's claims are timely.

■ The construction and applicability of a statute of limitation is a question of law, reviewed de novo. *Benigni v. County of St. Louis*, 585 N.W.2d 51, 54 (Minn. 1998). Here, the controlling statutory authority is the statute of limitations provision in the 1983 originally-enacted language of the MERLA, and as the statute was subsequently amended in 1998.

*Statute of Limitations Provision of Original MERLA*

MERLA created four distinct causes of action for recovery of 1) environmental-response costs; 2) natural-resource damages; 3) economic damages; and 4) damages for death, personal injury, and disease. Minn.Stat. §§ 115B.04, 115B.05, 115B.17 (2000). With respect to the original statute of limitations provisions, it reads in pertinent part:

**2.** The district court, in a footnote, refers to one of the state's responses to an interrogatory served by defendant Commercial Union, and says,

that the State * * * not only discovered the pollution at East Bethel in 1982 but also *began remedial activities* there later that year. Similarly, in its responses to the same interrogatories and document requests, the State admitted to discovering the pollution at Oak Grove in 1984 and beginning remedial activities there later that year.

The district court surmised "that even under the current version of MERLA," the state's claims "may not have been timely filed." We initially note that the state did not say *it* undertook the activities it referred to in the response, only that "remedial activities commenced," without indicating who undertook them. The affidavits of Douglas Day and Thomas Newman make clear that the state

did not undertake physical activities at either site in the 1980s, but that such activities were undertaken by the responsible parties. Moreover, the state's interrogatory response refers to ending the "migration of contaminants from the sites and the progressive damages caused by that migration." It appears to us that the activities the state referred to were more in line with the temporary actions that the statute defines as "removal" ("actions necessary to * * * minimize * * * or mitigate the damage" (Minn.Stat. § 115B.02, subd. 17(5) (2000))), rather than with the permanent type of remedial action necessary for the cause of action to accrue ("actions consistent with a permanent remedy taken instead of or in addition to removal actions" (*Id.*, subd. 16(a) (2000))). In any case, because we are to view the evidence in the light most favorable to the state, this opinion assumes that the state first incurred remedial costs in 1995 and 1996.

No person may recover damages pursuant to sections 115B.01 to 115B.15 unless the action is commenced within six years from the date when the cause of action accrues. In determining when the cause of action accrues for an action to recover damages for death, personal injury or disease, the court shall consider factors including the following:

(1) When the plaintiff discovered the injury or loss;

(2) Whether a personal injury or disease had sufficiently manifested itself; and

(3) When the plaintiff discovered, or using due diligence should have discovered, a causal connection between the injury, disease, or loss and the release of a hazardous substance.

Minn.Stat. § 115B.11 (1984). (This language remained the same after the 1998 amendments.) Noticeably, the statute does not define when a "cause of action accrues" for a cost-recovery action, nor are there any Minnesota appellate cases defining the phrase. Federal courts construing MERLA ruled that the accrual date for cost-recovery actions is the same as that provided under Minnesota common law for damages to real property: six years from the date of discovery. *Union Pacific R.R. Co. v. Reilly Indus., Inc.*, 4 F.Supp.2d 860, 865 (D.Minn.1998) (*Union Pacific I*), aff'd, 215 F.3d 830, 840–41 (8th Cir.2000) (*Union Pacific II* ).

Here, the district court, relying primarily on the *Union Pacific* decisions, adopted the discovery-accrual rule and held that the MERLA statute of limitations as it originally existed in 1983 time-barred the state's cost-recovery claims. The district court found that the state had knowledge of the contamination at the two sites in 1982 and 1984. Because the court found that the applicable accrual standard in MERLA cost-recovery actions is the date of discovery, it determined that the state's claims were time-barred in 1988 and 1990, respectively.

The state contends that because of the statute's silence and the possible conflicting interpretations, the statute is ambiguous, and therefore the court erred in not applying the rules of statutory construction to determine the intent of the legislature. The state argues that the intent of the legislature was always for the state to have six years from the date of remedial construction to recover response costs and that the 1998 amendment was to clarify that intent.

The state correctly points out that, on its face, the original MERLA is silent about the accrual date for cost-recovery actions by the state and speaks only to personal injury claims. Respondents, however, point to the statute's use of the word "person" and its corresponding definition to support their argument that the discovery-accrual rule applies:

"Person" means any individual, partnership, association, public or private corporation or other entity including the United States government, any interstate body, the state and any agency, department or political subdivision of the state.

Minn.Stat. § 115B.02, subd. 12. (1984). But respondents' argument fails to address the fact that the legislature prescribed a discovery-accrual rule only for damage actions for death, personal injury, and disease, while remaining silent on the other causes of action that may be brought under MERLA, including cost-recovery causes of action.

■ Where a statute is silent on a key point and is subject to different plausible interpretations, the statute must be considered ambiguous. *Burkstrand v. Burkstrand*, 632 N.W.2d 206, 210 (Minn. 2001). If a statute is ambiguous, reviewing courts are to "ascertain and effectuate

the intention of the legislature." Minn. Stat. § 645.16 (2000). Legislative intent may be ascertained by considering, among other matters: (1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other laws upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous legislative history; and (8) legislative and administrative interpretations of the statute. *Id.* Additionally, courts are guided by certain presumptions:

(1) the legislature does not intend a result that is absurd, impossible of execution, or unreasonable;

(2) the legislature intends the entire statute to be effective and certain; [and]

\* \* \* \* \* \*

(5) the legislature intends to favor the public interest over any private interest.

Minn.Stat. § 645.17 (2000).

Here, the district court determined that in the absence of words to the contrary, the discovery-accrual rule applied to response cost-recovery claims. In reaching its decision the court relied primarily on *Union Pacific I,* the federal district court decision.

■ As an initial matter, federal court interpretations of state law are not binding on state courts. *See Jendro v. Honeywell, Inc.,* 392 N.W.2d 688, 691 n. 1 (Minn.App. 1986) (noting that although statutory construction of federal law by federal courts is entitled to due respect, this court is bound only by statutory interpretations of the Minnesota Supreme Court and United States Supreme Court), *review denied* (Minn. Nov. 19, 1986).

In relying on *Union Pacific I,* the district court discusses a Minnesota Supreme Court case that the *Union Pacific I* court relied on, *Minn. Mining and Mfg. Co. v.*

*Travelers Indem. Co. (3M ),* 457 N.W.2d 175 (Minn.1990). That case dealt with whether environmental-response costs incurred by 3M were covered as "damages" within the meaning of its liability insurance policies. *Id.* It did not address any statute of limitations issue. In holding that "damages" under the policy included environmental response costs, our supreme court explained that groundwater contamination has long been a recognized source of potential legal liability, and the advent of MERLA and other environmental statutes "merely changed the form of the liability for groundwater pollution, not the nature of that liability" so as to exclude coverage under the policies. *Id.* at 183. Both the district court and the *Union Pacific I* court quote language from the *3M* case out of context to support their conclusions. *See Union Pacific R.R. Co.,* 4 F.Supp.2d at 865. They point to the supreme court's language that "[t]he MERLA clean up requirement did not expand the common law remedy for pollution of property," but do not add the remainder of the sentence: "so that an order to clean up the contamination would not be within the reasonable expectation of the insured." *Id.* (quoting *3M,* 457 N.W.2d at 184).

■ The district court (as well as the federal district court) also cites an unpublished opinion of this court in support of its conclusion, *Hustad Dev. Corp. v. Browning–Ferris Indus.,* No. C5–94–2241, 1995 WL 254385 (Minn.App. May 2, 1995). We remind courts that our unpublished opinions are "[a]t best" of persuasive value and are not controlling. *Dynamic Air, Inc. v. Bloch,* 502 N.W.2d 796, 800 (Minn.App. 1993). In any case, in *Hustad,* the plaintiff brought common law claims of trespass, negligence, and nuisance, as well as a MERLA claim for economic damages. *Hustad,* at ——, 1995 WL 254385, at *1. This court applied the common law discovery-accrual rule to plaintiff's common law

claims and, without explanation, applied the same common law rule to the statutory MERLA claim. *Id.* Notably, neither *3M* nor *Hustad* involved a claim to recover response costs, and thus did not address the accrual period for cost-recovery response actions. Accordingly, we conclude that the district court erred in relying on the *Union Pacific* decisions to support the conclusion that the same accrual date applies under MERLA as is provided under Minnesota common law for the tort of damage to real property.

Such an interpretation of the legislature's silence fails to consider the legislative purpose and intent of MERLA. It also fails to consider that the legislature, in enacting MERLA, departed significantly from common law by imposing liability for environmental cleanup that is joint and several, retroactive, and strict. Minn.Stat. §§ 115B.03, subd. 1 (2000), 115B.04, subd. 1. Moreover, it fails to consider that MERLA is a "remedial statute" and should therefore be broadly construed in favor of the government in order to effectuate its remedial objectives. *Musicland Group, Inc. v. Ceridian Corp.*, 508 N.W.2d 524, 530 (Minn.App.1993), *review denied* (Minn. Jan. 27, 1994); *see In re Greater Morrison Sanitary Landfill*, 435 N.W.2d 92, 99 (Minn.App.1989) (holding that "[l]aws designed to implement [the] state's strong policy of environmental protection should be liberally construed to effectuate that policy"), *review denied* (Minn. Mar. 29, 1989).

We look first to the words of the statute. Here, the legislature expressly provided what is essentially the common-law discovery-accrual rule[3] for personal injury claims, but remained silent as to when a cause of action accrues for the remaining causes of action authorized in the statute. *See* Minn.Stat. § 115B.11. When the legislature applied the common-law discovery-accrual rule to personal injury actions, it had the opportunity to apply the same rule to response cost-recovery actions, but chose not to do so. This omission implies that the legislature intended some other rule than the common law accrual rule for state actions seeking recovery of response costs. *See Nichols v. Metro. Bank*, 468 N.W.2d 84, 86 (Minn.App.1991) (stating that legislative silence on repossession activities in its definition of "collection agency" implies an intentional exclusion from its definition), *review denied* (Minn. June 18, 1991). The question remains as to when the legislature intended a state cost-recovery response action to begin to accrue.

Bearing in mind the rule that the legislature does not intend a result that is absurd or impossible of execution, we begin with the fact that in 1970—before MERLA was even enacted—the legislature was aware of approximately 250 landfills creating water-pollution problems, many of which had leached contaminants into the water table. Gov. Wendell R. Anderson, *First Annual Report on the Quality of the Environment*, 41 Jan. 1974.[4]

---

**3.** Under Minnesota common law, a cause of action accrues and the statute of limitations begins to run when the plaintiff discovers or should have discovered the injury/damages. *See Dalton v. Dow Chem. Co.*, 280 Minn. 147, 153, 158 N.W.2d 580, 584 (1968).

**4.** Respondent Wausau asserts that this report was improperly submitted, though fails to explain how. In any event, "groundwater contamination has been recognized in Minnesota for many years," *3M*, 457 N.W.2d at 183, and

reviewing courts may consider publicly available articles that were not presented to the district court. *Fairview Hosp. Health Care Servs. v. St. Paul Fire & Marine Ins. Co.*, 535 N.W.2d 337, 340 n. 3 (Minn.1995); *see In re Estate of Turner*, 391 N.W.2d 767, 771 (Minn. 1986) (denying motion to strike where "[o]n an issue of such magnitude, we see no reason why a party may not submit [a public annual] report to us as part of its brief when we could refer to such a report in the course of our own research, if we were so inclined.").

Given the sheer number of contaminated sites known to the legislature when it enacted MERLA in 1983, if the accrual period were to begin when the contamination was discovered, then by definition, no cost-recovery actions could be brought with respect to these sites. The result is a statute impossible of execution. Moreover, such a result is impractical and frustrates the very purposes of MERLA: to impose strict liability upon responsible parties and to allow the state to collect costs after cleaning up the contamination. Only if a cause of action to recover response costs accrued at the time of on-site construction of a permanent response action, would the state be able to recover its cost for cleaning up those landfills known to be contaminated prior to the enactment of MERLA. *See* Minn.Stat. § 115B.02, subd. 16 (defining remedial response actions as those actions consistent with a permanent remedy).

Additionally, the legislature imposed certain initial administrative tasks on the MPCA before it could take any remedial action. First, MERLA required the MPCA to establish and adopt rules by July 1, 1984, and also to establish a list of priority sites for taking remedial action. Minn.Stat. § 115B.17, subd. 13. Further, the MPCA was not permitted to expend public money on site cleanup unless it first determined that responsible parties would not take the remedial action in the manner or within the time requested, a process that takes considerable time and would further delay the state's ability to bring an action. *Id.*, subd. 1(a). Given the limited resources the MPCA had to conduct investigation and cleanup, a discovery-accrual rule for cost-recovery actions would have forced the MPCA to begin litigation at countless sites around the state immediately after MERLA was enacted, instead of devoting its resources to cleanup and establishing rules and identifying sites and

responsible parties as required by the statute.

■ When choosing between possible definitions of a statutory term, the reviewing court must adopt the interpretation that appears to be the more logical in concept and the more practical in application. *In re Welfare of C.P.K.*, 615 N.W.2d 832, 834 (Minn.App.2000), *review denied* (Minn. Aug. 22, 2000). Similarly, where a law is susceptible of more than one meaning, a reviewing court is not to adopt an interpretation that defeats the purpose of the law. *Governmental Research Bureau v. Borgen*, 224 Minn. 313, 320, 28 N.W.2d 760, 764 (1947). In light of the purposes of MERLA, the consequences of adopting respondents' interpretation, and the legislative exclusion of cost-recovery response actions from the statute's definition of when a cause of action accrues, we cannot conclude that the legislature intended to apply a common law accrual period to actions by the state to recover response costs. We hold, therefore, that in order to effectuate the purposes of MERLA, the legislature intended for a cause of action to recover response costs incurred by the state to accrue at the time of on-site construction of a permanent response action.

We note that our analysis is not unlike that of federal courts' interpretations of CERCLA. Because MERLA was modeled after the federal CERCLA of 1980, federal interpretation of CERCLA is instructional. As with MERLA, CERCLA did not expressly provide an accrual period (or even a statute of limitations period) for cost-recovery response actions, but did provide a three-year statute of limitations from the date of discovery for action to recover damages to natural resources. *See* 42 U.S.C. § 9612(d) (1982). Due to CERCLA's silence regarding the accrual period for cost-recovery response actions, federal courts applied the rules of statuto-

ry construction to determine Congress' intent.

Courts interpreting CERCLA's statute of limitations provision began with the proviso that the remedial intent of CERCLA required a liberal statutory construction designed to avoid frustration of the act's purpose. *United States v. Mottolo*, 605 F.Supp. 898, 902 (D.N.H.1985). The purpose of CERCLA was to provide the government with tools to respond to the nationwide threat posed by hazardous-waste disposal and to impose costs and responsibility for remedial action upon the persons responsible. *Id.*

The *Mottolo* court found that Congress created a "silent exception" to CERCLA's three-year statute of limitations by omitting any reference to claims for cost reimbursement. *Id.* at 903. The court held, therefore, that no statute of limitations applied to governmental actions for reimbursement of remedial-response costs. *Id.* at 909–910.[5]

Similarly, other federal courts concluded that in the absence of an express statute of limitations for cost-recovery response claims, the government was not time-barred in bringing its claims. *See United States v. Dickerson*, 640 F.Supp. 448, 451 (D.Md.1986) (granting motion to strike statute of limitations as affirmative defense to cost-recovery claim); *Kelley v. Thomas Solvent Co.*, 714 F.Supp. 1439, 1449–50 (W.D.Mich.1989) (striking statute of limitations defense as legally insufficient when interpreting CERCLA prior to amendment); *United States v. Shell Oil Co.*, 605 F.Supp. 1064, 1075–76 (D.Colo. 1985) (holding that to give meaning to the time limitation provisions for pre-enactment damages to natural resources, requires a finding that liability is not so

limited for pre-enactment response costs in the absence of such a time limitation).

Thus, our holding that the legislature did not intend to apply a common law accrual rule to the MERLA statute of limitations provision is consistent with federal courts' interpretation of similar provisions in CERCLA.

Assuming, as we have, that the state first incurred environmental response costs related to the construction of remedial action at the two landfills in 1995 and 1996, we conclude that the state's claims are not time-barred by the statute-of-limitations provisions of MERLA as originally enacted, and that therefore summary judgment was inappropriate. In light of this conclusion we need not decide whether the 1998 amendments to MERLA revived the state's claims.

We turn next to respondents' constitutional challenges to the statutes.

## II.

Respondents argue that the Insurance Recovery Amendments to the LCA, which permit the state to bring a direct action against an insurer, violate the Supremacy Clause of the U.S. Constitution and the Contracts Clauses of the U.S. and Minnesota Constitutions for two reasons: (1) the amendments wipe out essential provisions of the insurance contracts at issue and thereby substantially impair the respondents' contracts with their policyholders without justification; and (2) the amendments are preempted by the federal CERCLA. Respondent Home also argues that the LCA violates the Commerce Clause.

---

5. Congress amended CERCLA in 1986 to include a six-year statute of limitations provision for the recovery of remedial response costs from responsible parties, commencing from the date of "physical on-site construction of the remedial action." 42 U.S.C. § 9613(g)(2)(B) (1994).

The district court denied respondents' summary judgment motions, finding that respondents did not meet their threshold burden of proof showing a substantial impairment of a contractual obligation in violation of the Contracts Clause of the U.S. and Minnesota Constitutions. Similarly, the district court found no statutory conflict between the LCA and CERCLA in violation of the Supremacy Clause. Finally, the court found that respondent Home failed to show that amendments to the LCA placed an unconstitutional burden on interstate commerce in violation of the Commerce Clause of the U.S. Constitution.

■ On appeal from the denial of a motion for summary judgment, we examine the record to determine whether any genuine issues of material fact exist and whether the district court erred in applying the law. *Offerdahl v. Univ. of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). "Evaluating a statute's constitutionality is a question of law." *Hamilton v. Comm'r of Pub. Safety,* 600 N.W.2d 720, 722 (Minn.1999) (citations omitted). Accordingly, this court is "not bound by the lower court's conclusions." *Id.* (citations omitted). We must view the evidence in the light most favorable to the nonmoving party. *Offerdahl,* 426 N.W.2d at 427.

■ "Minnesota statutes are presumed constitutional, and our power to declare a statute unconstitutional should be exercised with extreme caution and only when absolutely necessary." *In re Haggerty,* 448 N.W.2d 363, 364 (Minn. 1989) (citation omitted). The party challenging a statute must demonstrate beyond a reasonable doubt that a statute violates a constitutional provision. *Jacobsen v. Anheuser Busch,* 392 N.W.2d 868, 872 (Minn.1986), *cert. denied,* 479 U.S. 1060, 107 S.Ct. 941, 93 L.Ed.2d 991 (1987).

The LCA was enacted to create a more effective and economical program to achieve landfill cleanup than was attainable under MERLA by authorizing the MPCA to assume environmental responsibility for qualified closed landfills. Minn. Stat. § 115B.40 (2000). To help pay the state for the cost of cleaning up the landfills, the statute initially authorized the state (1) to issue bonds; (2) to assess a solid-waste-assessment tax on all residential and business customers; and (3) to permit the state to seek contribution for response costs from insurance companies that had previously sold liability policies to PRPs. *See* Minn.Stat. §§ 115B.42 (2000) (bonds); .22 (2000) (hazardous waste generator tax); .44 (1994) (contribution from insurance companies) (repealed by 1996 Minn. Laws ch. 370, § 7).

Participation by PRPs in the LCA cleanup program is voluntary. If a PRP chooses not to enter into a settlement with the state, the PRP may bring a contribution claim against other PRPs under MERLA or CERCLA for response costs. Conversely, by entering into a settlement with the state, a PRP is relieved of the cost and burden of environmental cleanup under MERLA and in exchange, the PRP assigns any right to liability coverage under its insurance policies to the state. Minn. Stat. §§ 115B.40, subd. 7(b)(2); 115B.43, subd. 2(a)(2)(ii) (2000).

Under the Insurance Recovery Amendments to the LCA, the state is permitted to bring a direct action for response costs against insurance companies who have issued policies to PRPs. Minn.Stat. §§ 115B.441–.445 (2000). The PRP is required to cooperate with the state in preparation for negotiating a settlement with its insurance company. *Id.* As part of any settlement, the insurer must waive its contribution and subrogation rights for any amounts paid in the settlement. Minn. Stat. § 115B.443, subd. 9.

It is important to note that if the parties do not settle, the insurers retain the right to assert the same defenses they would have if the LCA not been enacted. The state obtains no greater rights against insurer defendants than the insurers' policyholders would have if they were the parties seeking to enforce the coverage provisions of their policies. Minn. Stat. § 115B.444, subd. 1. And the LCA preserves the right of the insurance company to assert the same defenses against the state that it could assert in a suit by a third party against the PRP insured. *Id.* Thus, insurance companies are allowed both to deny coverage under their policies and to contest their policyholders' underlying cleanup liability as well. In this respect, the LCA merely codifies the result that the state could obtain under common law principles relating to subrogation by satisfying a PRP policyholder's liability under MERLA.

*Impairment of Contracts*

■■■ Respondents argue that the direct action and cooperation provisions of the Insurance Recovery Amendments to the LCA unconstitutionally impair the obligations of the insurers' contracts with their policyholders in three ways. They argue the amendments substantially impair their contract rights by: (1) effectively removing the "no action" clauses from the policies at issue; (2) diminishing their contractual rights to policyholder cooperation and subrogation; and (3) altering their contract rights retroactively. *See* Minn.Stat. §§ 115B.442, subd. 4 (stating that PRPs must provide information regarding liability insurance coverage); 115B.443, subd. 9 (setting forth settlement terms for insurers regarding contribution, subrogation, and effect of settlement on joint and several liability).

■■■ The United States Constitution provides that "[n]o State shall * * * pass any * * * Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. The Minnesota Constitution provides similar protections. Minn. Const. art I, § 11. Minnesota Contract Clause challenges are analyzed using the same three-part test. *Jacobsen v. Anheuser–Busch, Inc.,* 392 N.W.2d 868, 872 (Minn.1986). When determining whether a law violates the Contracts Clause, respondents must initially meet a threshold burden: the aggrieved party must in fact show that the legislation substantially impairs a contractual obligation. *Energy Reserves Group v. Kan. Power & Light Co.,* 459 U.S. 400, 411, 103 S.Ct. 697, 704, 74 L.Ed.2d 569 (1983). If that showing is made, it must then be demonstrated that the state does not have a significant and legitimate public purpose behind the legislation and that the legislation is unreasonable and not appropriately tailored to accomplish the asserted public purpose. *Id.* To meet the threshold burden, the Supreme Court requires the party alleging the violation to show that the state regulation has caused serious economic harm. *Id.* at 411, 103 S.Ct. at 704.

Upon reviewing the record, we conclude that respondents did not meet this threshold burden sufficient to compel summary judgment for several reasons:

1. Respondents presented insufficient facts to demonstrate that since the amendments were passed, respondents have been subject to an increase in claims-related expenses due to the amendments.

2. The state presented evidence that PRPs are able to provide basic factual information required under the LCA without violating cooperation clauses in their contracts while simultaneously assisting the insurer's defense against such claims. The district court therefore found that there was insufficient evidence presented that the amendments will cause PRPs to dishonor their contractual duty to cooper-

ate with the insurers in such a way that would create a pecuniary loss.

3. There was no showing that any alleged altering of contribution rights has injured the respondents financially, and respondents have not presented factual evidence that connects the statutory removal of the right to contribution to any financial loss.

4. Respondents admit that it is "impossible to know" how substantial the statute's financial burden will be on them, and although factual certainty regarding the exact level of economic harm is not essential to a finding of serious economic harm, there must be at least some specific evidence that proves the actual existence of calculable economic harm.

5. The LCA amendments may well confer an economic benefit on respondents. For example, because the state steps into the shoes of the PRP policyholder, an insurer is able to assert all its available defenses in a single action brought by the state, rather than being required to assert liability defenses in one action bought by the state and coverage defenses in a second action brought by the policyholder (or its subrogee). Thus, attorney fees and litigation costs may be reduced. Further, the total cost of remediating landfills may be reduced due to the economies of scale available because a single entity, the state, has assumed the responsibility for cleaning a large number of sites. The result may well be a decrease in the amount the insurers will have to pay out in landfill cleanup claims on the policies they issued to the PRPs.

In light of the dearth of facts presented to the district court to establish a threshold showing of substantial impairment of their contractual obligations, we affirm the district court's denial of summary judgment with respect to respondents' Contract Clause challenges.

*Federal Preemption*

Respondents also argue that MERLA is preempted by CERCLA and therefore is unconstitutional. The Supremacy Clause of the U.S. Constitution invalidates state laws that interfere with or are contrary to the laws of Congress. *Wisc. Pub. Intervenor v. Mortier*, 501 U.S. 597, 604, 111 S.Ct. 2476, 2481, 115 L.Ed.2d 532 (1991). Federal preemption of state statutes is found in one of three ways: (1) where the federal statute expressly states that it is preempting state law ("express preemption"); (2) where the federal regulatory scheme is so pervasive the Congress must have intended to "occupy the field" and disallow any state regulation on the same subject ("field preemption"); and (3) where Congress has chosen not to occupy a field, but federal and state law conflict ("conflict preemption"). *Barnett Bank of Marion County v. Nelson*, 517 U.S. 25, 31, 116 S.Ct. 1103, 1107–08, 134 L.Ed.2d 237 (1996).

Respondents do not argue that express preemption applies here. With respect to field preemption, 42 U.S.C. § 9614(a) states:

> [n]othing in this chapter shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to release of hazardous substances within the State.

42 U.S.C. § 9614(a) (1994). Therefore, there is no intent by Congress to "occupy the field" and disallow any state regulation on the subject. *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of Mont.*, 213 F.3d 1108 1114 (9th Cir.Mont.2000).

As to conflict preemption, the issue is whether the provision of the LCA that permits the state to file a direct action against insurers conflicts with the provision of CERCLA that establishes when a

direct action against someone other than a responsible party may be brought under CERCLA. *See* 42 U.S.C. § 9608(c) (1994); Minn.Stat. § 115B.444, subd. 1. Conflict preemption is found when it is impossible to comply with both federal and state law, or if the state law is an obstacle to the accomplishment of Congress' objectives. *Nelson,* 517 U.S. at 31, 116 S.Ct. at 1107–08.

CERCLA does allow a direct right of action against "guarantors" in limited circumstances related to insolvency of the PRP when evidence of financial responsibility by the guarantor is provided. 42 U.S.C. § 9608(c)(1), (2).[6] Even so, an insurer is not necessarily a guarantor under CERCLA. A guarantor is defined as "any person, other than the owner or operator, who provides evidence of financial responsibility for an owner or operator under this chapter." 42 U.S.C. § 9601(13) (1994).

Here, the district court found that there was no conflict between the acts because the LCA is part of a totally separate legislative scheme that does not even implicate CERCLA. We agree. There is nothing in CERCLA that denies a state the right to create direct actions under its own law. Indeed, as noted, CERCLA specifically states that

> [n]othing * * * shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within such State.

42 U.S.C. § 9614(a). Because the direct-action provisions of the LCA merely provide a remedy for a breach of a duty created under state law, and because CERCLA prohibits only direct actions to recover damages for claims brought under CERCLA, we conclude that the Supremacy Clause is not implicated and the direct-action provisions of the LCA are not preempted by CERCLA.

■ Respondents also argue that a number of contribution-related provisions of the LCA are preempted by CERCLA. CERCLA grants PRPs that are sued by the federal government for cleanup costs the right to seek contribution from other responsible parties for their fair share of the response costs. *Bedford Affiliates v. Sills,* 156 F.3d 416, 427 (2d Cir.1998). From this, respondents argue that the LCA provisions requiring PRPs to waive their contribution rights upon participation in the LCA program is preempted by CERCLA, as is the LCA provision that requires insurers to waive contribution claims upon settlement of direct-action claims brought by the state. *See* Minn. Stat. §§ 115B.43, subd. 2 (stating that PRPs must waive contribution rights); 115B.443, subd. 9 (stating that insurers must waive their contribution claims).

However, respondents' argument fails to consider that (1) CERCLA does not directly grant contribution rights to insurers; therefore, it does not primarily affect insurers; and (2) the waiver of contribution rights is optional for both insurers and PRPs under the LCA, (PRP or insurer can choose not to settle). Therefore, any contribution rights under CERCLA or the LCA remain available. Moreover, both CERCLA and the LCA provide that PRPs that enter into settlements with a state are entitled to contribution protection from future claims. 42 U.S.C. § 9613(f)(2) (1994); Minn.Stat. § 115B.443, subds. 8, 9. We therefore conclude that the LCA contribution waiver provisions do not conflict with

---

6. Certain CERCLA claims may be asserted directly against a guarantor providing evidence of financial responsibility for particular facilities if the person liable is in bankruptcy, reorganization or arrangement pursuant to the Federal Bankruptcy Code, 42 U.S.C. § 9608(c)(2)

CERCLA and its provisions are constitutional.

## Commerce Clause

■ Respondent Home argues that the Insurance Recovery Amendments to the LCA are unconstitutional because they burden interstate commerce in two ways: (1) they impose economic protectionism benefiting Minnesota at the expense of other states and to the detriment of out-of-state insurers and policyholders; and (2) they allow Minnesota to interfere with interstate commerce without any balancing of the minimal local benefit against the heavy restraint of commerce nationally.

■ The Commerce Clause grants Congress the power to regulate commerce among the several states. U.S. Const., art. I, § 8, cl. 3. The power to regulate commerce also encompasses an implicit or "dormant" limitation on the authority of states to enact legislation affecting interstate commerce. *Cotto Waxo Co. v. Williams*, 46 F.3d 790, 793 (8th Cir.1995). State regulation may therefore not overburden interstate commerce. *Id.* However, not every exercise of state power with some impact on interstate commerce is invalid. A state statute must be upheld if it

> regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental * * * unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits.

*Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970) (citing *Huron Portland Cement Co. v. Detroit*, 362 U.S. 440, 443, 80 S.Ct. 813, 816, 4 L.Ed.2d 852 (1960)).

■ The U.S. Supreme Court adopted a two-tiered approach for analysis of state statutes under the Commerce Clause in *Brown–Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 578–79, 106 S.Ct. 2080, 2084, 90 L.Ed.2d 552 (1986). The first part of the analysis asks whether the statute in question directly affects interstate commerce. *Id.* Statutes that directly regulate or discriminate against interstate commerce, or that have the effect of favoring in-state economic interests over out-of-state interests, are unconstitutional. *Id.* If the effect upon interstate commerce is indirect, then it becomes a question of whether the economic burden on interstate commerce is clearly excessive in relation to the putative local benefits. *Id.* While there is no clear line separating the two categories (direct versus indirect burden on interstate commerce), "the critical consideration is the overall effect of the statute on both local and interstate activity." *Id.*

Home argues that the provision in the LCA amendments that requires the attorney general to approve otherwise private negotiations between insurers and their policyholders directly affects interstate commerce. Home contends that the amendments impermissibly burden interstate commerce by effectively preventing settlements negotiated in consideration of a broad policy release, if the release might possibly affect the policyholder's potential liability to the state at a Minnesota landfill. As an example, Home points to the district court's ruling that partially invalidated Home's agreement with Ford Motor Co. (Ford), because Ford did not seek approval from the attorney general's office as required by the statute. Home argues that the LCA impermissibly enables Minnesota to take a disproportionate share of insurance proceeds collected nationally by authorizing a veto power over out-of-state settlements in the absence of any compelling or legitimate state interest.

The district court, in denying respondents' summary judgment motion, found that the LCA does not directly burden

interstate commerce because the amendments do not directly target out-of-state insurers for regulation. The court also found no indirect burden under the Commerce Clause because respondents did not show that the statute has caused or will cause them any significant economic harm. We agree.

The statutory language at issue reads:

A policyholder may not enter a settlement that releases an insurer from any claims for which the state has an action under subdivision 1, unless the attorney general has given prior written approval to the settlement and the policyholder agrees to assign to the state any amounts recovered under the settlement from the insurer that are attributable to the resolution of the claims.[7]

Minn.Stat. § 115B.444, subd. 2(b).

We initially note that the statute does not purport to regulate every settlement agreement that insurance companies may have with Minnesota companies; rather, it seeks to regulate only those settlements involving qualified landfill sites in which the state has a legitimate interest (not *all* landfills), because the state essentially assumed the liability of the PRP policyholder. The involvement of the state is therefore limited. Without a requirement for state approval of such settlements, insurers and their policyholders could deprive the state of any recovery to which it has an interest by entering into a settlement agreement that releases the insurer from further liability. Further, because the act pertains uniformly to settlements between PRPs and insurers, regardless of where the insurance company is domiciled, it does not discriminate against out-of-state insurers in favor of in-state insurers. Accordingly, we conclude that the act does not directly burden the Commerce Clause so as to be unconstitutional.

We turn next to whether the statute *in*directly burdens interstate commerce. As we have already noted in part,

[a statute] will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree.

*Pike*, 397 U.S. at 142, 90 S.Ct. at 847 (citation omitted.) In this connection, the court is to balance the burden on interstate commerce against the putative local benefits. The benefit to the state, as noted above, is a procedure that protects the state from a settlement between an insurer and a policyholder that releases the insurer from further liability. Weighted against this benefit to the state, as the district court found, the respondents have failed to show that the LCA amendments imposed anything more than a minimal burden on interstate commerce. The district court found that there was no evidence setting forth the additional costs of doing business in Minnesota incurred by out-of state insurers as a result of the LCA amendments. We concur with the district court's conclusion that it is not enough to argue that most of the insurers are from out-of-state. Thus, we conclude respondents have not made a showing that the burden on interstate commerce is clearly excessive when weighed against the benefit to Minnesota. We affirm the district court's denial of respondents' summary judgment with respect to whether provisions of the LCA violate the Commerce Clause.

---

**7.** Subdivision 1 of the statute permits the state to bring a state action against any insurer for recovery of all environmental response costs incurred that are related to qualified facilities for which the state has assumed response action obligations or responsibilities. Minn. Stat § 115B.444, subd. 1.

*Settlement, Release, and Policy Buy–Back Agreement with Ford*

■ The district court denied Home's motion for partial summary judgment seeking to dismiss the state's claims. Home contends that a 1999 settlement agreement with Ford released Home from any liability, thus barring the state's claims against Home. The LCA requires PRPs to obtain state approval prior to entering into any settlement agreement purporting to release an insurer from liability under which the state may have a claim. Minn.Stat. § 115B.444, subd. 2(b).

Home argues on appeal that it should not be penalized for its settlement with Ford for Ford's failure to obtain the state's consent prior to entering the settlement agreement. Home argues that the state's remedy should have been an action against Ford, not against its insurer. The pertinent provision in the February 1999 settlement agreement reads:

> Effective as of its receipt of the Settlement Payment, Ford fully, absolutely, and unconditionally releases and for all purposes forever discharges Home, Risk Enterprise Management Limited ("REM") and REM's directors, officers, agents and employees from any and all Claims under, arising out of, or relating in any way to the Policies, except for Claims concerning the enforcement of this Agreement. Ford acknowledges that by this release and this Agreement, Home and REM have been relieved of all liability under, arising out of, or relating in any way to the Policies.

In May of 1995, prior to Home's settlement agreement with Ford, the state sent both Ford and Home a letter explaining the LCA's insurance-recovery provisions. As a result, Home knew that Ford could not execute the release without the state's consent when it negotiated the settlement and release. Moreover, 1995 is the year the state took over cleanup liabilities at the Oak Grove landfill. The state points out that as of that time, the state became equitably subrogated to Ford's rights to coverage under its policies with Home with respect to the state's claims for response costs for this site and Ford had no authority to release those subrogation rights. Therefore, because Ford did not have the state's approval as required by the LCA to execute such an agreement releasing Home from liability, the district court did not err in denying Home's summary judgment motion.

### DECISION

We reverse the district court's grant of respondents' summary judgment motion finding the state's claims are time-barred by the statute of limitations provision in MERLA, and remand for further proceedings consistent with our holding. We affirm the district court's denial of respondents' summary judgment motions relating to respondents' constitutional claims. We also affirm the district court's denial of Home's summary judgment motion seeking dismissal based on its settlement agreement with Ford.

**Affirmed in part, reversed in part, and remanded.**